[Civ. No. 63101. Second Dist., Div. Four. May 24, 1982.]

COUNTY OF LOS ANGELES et al., Plaintiffs and Appellants, v. FARMERS INSURANCE EXCHANGE et al., Defendants and Respondents.

**COUNSEL**

John H. Larson, County Counsel, Frederick R. Bennett, Deputy County Counsel, Ira Reiner, City Attorney and Pedro B. Echeverria, Assistant City Attorney, for Plaintiffs and Appellants.

Barger & Wolen, Kent Keller, Royal F. Oakes, Ronald D. Kent, Hagenbaugh & Murphy, Irwin Waldman, Jeffrey D. Hathaway and Robert R. Ronne for Defendants and Respondents.

OPINION

McCLOSKY, J.—Appellants County of Los Angeles, a political subdivision of the State of California, and City of Los Angeles, a municipal corporation, appeal from a judgment (partial order of dismissal) dismissing these consolidated actions as to respondents Farmers Insurance Exchange and Interinsurance Exchange of the Automobile Club of Southern California (Code Civ. Proc., § 581, subd. 3) following the trial court having sustained their general demurrers without leave to amend to the first and second causes of action of appellants' consolidated complaint (hereafter "complaint" unless otherwise noted). At the time the court sustained the demurrers against appellants as to the aforesaid respondents, it sustained with leave to amend, the demurrer of Wesley J. Kinder, Insurance Commissioner of the State of California[1] to the consolidated complaint. The latter defendant is not a party to this appeal.

We set forth only so much of the procedural history and facts of this voluminous case as is necessary to give meaning to our determination of it. After previous pleading, and other proceedings, which included, among others, prior complaint proceedings before the Commissioner and prior complaints in the Los Angeles Superior Court, appellants filed the "Consolidated Complaint for Declaratory Relief and Injunctive Relief" against these respondents and for the same and further relief against Commissioner.

By their consolidated complaint appellants complain of, and seek injunctive relief on behalf of their residents and themselves, to enjoin some 20 specific alleged unlawful practices[2] relating to territorial rating

---

[1]For convenience, both Wesley J. Kinder, the Insurance Commissioner of the State of California at the time this litigation was instituted, and Robert C. Quinn, Commissioner Kinder's successor, will be referred to herein as Commissioner.

[2]Insurance Code section 11628 provides in pertinent part: "[N]or shall race, language, color, religion, national origin, ancestry, or location within a geographic area of itself constitute a condition of risk for which a higher rate, premium, or charge may be required of the insured for such insurance."

for automobile insurance whereby their residents in certain of their territories are charged discriminating and excessive rates for automobile insurance based primarily on what part of the city and county they reside and garage their private passenger automobile; racially discriminate by "redlining" whereby automobile insurance is unavailable in areas of the city and county populated primarily by Blacks and Mexican-Americans; and methods of allocating commissions and expenses in a manner which adversely affects the cost of insurance in Los Angeles.

They alleged that respondents' illegal practices result in a large number of uninsured drivers within the county and city, burden the county with medical and other social services costs when indigents who are injured cannot resort to insurance coverage, burden the county and city with the costs of property damaged by uninsured drivers, force inhabitants out of certain high rated territories thereby exacerbating the deterioration of those territories with resultant loss in property values and property tax revenues, encourage businesses to leave such territories and relocate elsewhere thereby resulting in loss of employment opportunities and loss of sales tax revenues, and force many residents not to drive, all of which results in injury to the economy and welfare of the city and county.

They allege further that they have exhausted their administrative remedies before the Insurance Commissioner, which allegation will be set forth in full below.

The remaining causes of action of the complaint are directed against the Commissioner and are not involved in this appeal.

In sustaining respondents' general demurrers to the first two causes of action of the consolidated complaint the trial judge gave as his sole ground: "Failure to exhaust administrative remedies."

## CONTENTIONS

Appellants contend that (1) there is no available or adequate administrative remedy which appellants are required to exhaust before proceeding with the present action; (2) under the circumstances of this case they are not required to bring a separate mandate action to compel the Insurance Commissioner to make specific findings as to respondents; (3) that even though there is no administrative remedy which appellants must exhaust the court deferred the matter to the Insurance

Commissioner under the doctrine of primary jurisdiction; the purpose of that doctrine now having been accomplished there is no reason to further delay the action; (4) the court did not reach the second ground of the demurrer, appellants' standing to bring this action both in their individual capacity and in a representative capacity to enjoin and redress the continuing injuries to themselves and their residents caused by respondents' illegal practices.

Both respondents contend that appellants lack standing to sue, and respondent Farmers Insurance Exchange also contends that: "Appellants may not do indirectly through the judiciary system [sic] what they could not have done directly through the Legislature as the state has preempted the entire field of insurance rating practices." Lastly, both respondents contend that appellants have failed to exhaust their administrative remedies.

DISCUSSION

We conclude that appellants have failed to exhaust their administrative remedies which were available to them. That conclusion is dispositive of the matter and makes unnecessary any discussion of the other contentions of the parties.

I

Paragraph 41 of the first cause of action repeated and incorporated by reference in the second cause of action of the complaint reads as follows: "41. The Plaintiffs have exhausted their available administrative remedies before the Insurance Commissioner. On August 14, 1978, Plaintiff COUNTY OF LOS ANGELES, in accordance with the direction of the Court filed a petition for a hearing before the Department of Insurance and Defendant KINDER, pursuant to Insurance Code Section 1858 et seq., and otherwise, in both its individual capacity and in its representative capacity on behalf of the residents of the County, which include the residents of the City of Los Angeles, raising all of the issues alleged and raised by this complaint. When the Commissioner and Department of Insurance had not granted a hearing on said petition, Plaintiffs moved the Court for an order vacating the stay order. In response to said motion, the Department of Insurance advised the Court that said hearings would begin on or before March 15, 1979. Said hearings were held by the Department of Insurance in March and April of

1979. On or about December 21, 1979, Defendant KINDER issued his findings, decision, and ruling, denying the relief prayed for."

We conclude that appellants' contention that they have exhausted their available administrative remedies and their allegation that there is no adequate administrative remedy which appellants are required to exhaust is without merit. The foregoing allegation in paragraph 41 of the complaint that they "have exhausted their available administrative remedies before the Insurance Commissioner" is a contention and a legal conclusion. ■ While generally material facts alleged in the complaint and facts which may be implied or inferred from those expressly alleged are treated as true for the purpose of ruling on the demurrer, contentions, deductions, and conclusions of law alleged in the complaint are not considered in judging its sufficiency. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032]; see also *Harvey* v. *Holtville* (1969) 271 Cal.App.2d 816 [76 Cal.Rptr. 795].) In short, the ruling on a demurrer determines a legal issue on the basis of assumed facts, i.e., those properly alleged in the complaint, regardless of whether they ultimately prove to be true. (See generally, 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413.) ■ Appellants' conclusional statement that they have exhausted their available administrative remedies therefore avails them nothing. (See *Pan Pacific Properties, Inc.* v. *County of Santa Cruz* (1978) 81 Cal. App.3d 244, 251 [146 Cal.Rptr. 428].)

The balance of paragraph 41 of appellants' complaint consists of a recitation of a portion of the procedural history of this case and of the hearings held by the Department of Insurance (Insurance Commissioner) and alleges that "[O]n or about December 21, 1979, Defendant KINDER issued his findings, decision and ruling denying the relief prayed for."

In fact an examination of the portion of the judicially noticed "Notice of Public Hearing issued by the Department of Insurance" dated February 5, 1979, shows that the Commissioner gave notice that those hearings would take place in five cities on specified dates "for the purpose of developing information, receiving testimony from the public, representatives of insurance companies and rating organizations, public officials, and any other interested persons relative to the practice of automobile insurance companies of developing and using geographic areas for rating purposes." The notice stated that the proposed "hearings are designed to assist the Commissioner in determining whether

current territorial rating practices meet the requirements of the laws of this state and to carry out the charge mandated by Assembly Concurrent Resolution 100 (Stats. 1978)." The notice then referred to the pending actions of the appellants and of the stay issued by the trial judge for the purpose of exhausting "available administrative remedies" which the Commissioner described in that notice, and then recited that the Commissioner proposed that its hearings were to be held to gather all relevant information and data to address the issue of fairness in the existing territorial rating practices and [to] make findings as to:

"1. Whether a geographic area constitutes a permissible rating consideration under the law;

"2. Whether a geographic area constitutes a reasonable and equitable rating criteria; and

"3. Whether, in compliance with the charge contained in ACR 100, existing geographic territorial rates are actuarially valid."

Whatever else may be said about the subject matter and issues addressed in that notice, it is obvious that by it the Commissioner put appellants on notice that the hearings, and any findings and decision that might result from them would not address all of the allegations of unlawful practices by *respondents* which were the subject of the first two causes of action of the complaint. By letter of October 23, 1978, the Commissioner by his chief counsel had sent a letter to appellant county stating the Commissioner's view of the limited nature of the hearings which could take place under the Commissioner's concept of what the applicable law was. Neither appellant moved to compel the Commissioner to resolve all of the issues presented by the complaint as it specifically applied to the respondents.

Following the hearings on December 19, 1979, the panel of three members of the Commissioner's staff who had conducted the hearings, issued its proposed "Findings and Recommendations" which were adopted by the Commissioner as his "Findings and Recommendations" December 20, 1979. In these the Commissioner found, among other things, that:

1. In light of Insurance Code sections 1852 and 11628, it cannot reasonably be concluded that the present statutes prohibit the use of geographic area as a component of rate setting procedures so long as each

territory contains at a minimum 20 square miles contiguous area; that the use of territorial classification is permissive and not mandatory; and that a geographic area does constitute a legally permissible rating consideration;

2. That the use of territorial classification does constitute a reasonable and credible rating criterion, but that this finding should not be considered a blanket approval of the territorial classification presently used by the insurance industry. It concluded in this regard to this finding that: "[T]his is not to say that there may not be good cause for criticism concerning the actual implementation of these procedures by some insurers"; that the record at the hearings demonstrates the necessity for the "insurance industry to be more sensitive to those social and economic changes which suggest modification in the territorial classification"; that the current practice of setting insurance rates by territory gives rise to the possibility that inequities may exist in certain territories and that the "concerns expressed by many individuals who wrote to the Commissioners or testified at the hearings to express their sincere and honest bewilderment about the fact that such costs appear to fall more heavily upon those least able to pay are clearly well deserving of further consideration by the Department to identify these perceived inequities";

3. That the methodologies used to develop geographical rates reasonably achieve the goals intended and therefore are actuarially valid.

It then concluded with a series of recommendations and actions for the Department of Insurance.

Nowhere in the Commissioner's "Findings and Recommendations" are there any findings or rulings as to the unlawful practices or specific violations of law charged by appellants to respondents in the complaint. Insofar as he made "recommendations" and instituted a series of "programs" it was allegedly to more closely supervise and monitor "rate-making procedures" of insurance companies and rate-making organizations, and not as to the particular respondent insurance companies or their unlawful practices attributed to them.

■ *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] makes clear that in California the fundamental rule of procedure "is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (See also *Pan*

*Pacific Properties, Inc.* v. *County of Santa Cruz, supra,* 81 Cal.App.3d at p. 249.)

That is so even where the administrative remedy is couched in permissive language. (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 985 [88 Cal.Rptr. 533].) ■ However, the requirement of exhaustion of administrative remedies does not serve to foreclose judicial review where the administrative remedy is inadequate or unavailable or where irreparable injury will occur if the administrative order is made effective without prior judicial interference. (*Associated Cal. Loggers, Inc.* v. *Kinder* (1978) 79 Cal.App.3d 34, 43 [144 Cal.Rptr. 786].) ■ The exhaustion of remedies doctrine does not apply to a challenge to the constitutionality of the basic statute under which the administrative agency operates, an issue not involved here (see *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281]), but it does apply to a class or representative action raising constitutional issues. (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d 977, 983.)

While it is true that the exhaustion requirement is inapplicable where an effective remedy is *wholly* lacking (*Bernstein* v. *Smutz* (1947) 83 Cal.App.2d 108, 115 [188 P.2d 48]) that was plainly not the situation in the case before us where we conclude that a remedy was provided.

The "jurisdictional prerequisite to review by the courts is the exhaustion of all administrative remedies [Citation] . . .' . . . is not a matter of judicial discretion, but is a fundamental rule of procedure . . . .'" (*Wilkinson* v. *Norcal Mutual Ins. Co.* (1979) 98 Cal.App.3d 307, 313 [159 Cal.Rptr. 416], citing *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280.)

Appellants contend that the "broad investigative power the Commissioner enjoys by virtue of Insurance Code section 12924 is not an administrative remedy which appellants must exhaust." Appellants' contention in this regard is, at best, that this section of the Insurance Code provides the Commissioner with the authority to issue subpoenas and investigatory power in aid of his continuing supervisory responsibilities over the insurance industry. This contention too is meritless.

While Insurance Code section 12924 does provide the Commissioner with investigative power, the subpoena power and other means of production of evidence, nothing in it deprives appellants from seeking from

the Commissioner the remedies provided in sections 1858-1858.7. As to these remedies, the Commissioner has the power to take corrective action as he deems necessary and proper (Ins. Code, § 1858.3); he can impose a money penalty not to exceed $1,000 for each failure to comply up to a total penalty of and aggregating no more than $30,000 (Ins. Code, § 1858.3); he can issue an order specifying in what respects a violation exists and require compliance within a reasonable time thereafter (Ins. Code, § 1858.3, subds. (b) and (c)); and in addition to the other penalties provided, he may suspend or revoke, in whole or in part, the certificate of authority of any insurer with respect to the class or classes of insurance specified in such order which fails to comply within the time limited by such lawful order of the Commissioner pursuant to section 1858.3. (Ins. Code, § 1858.4.) These are certainly adequate available remedies. Moreover, the Insurance Commissioner and the Department of Insurance possess sophisticated bodies of expertise in this field which make them particularly able to handle these matters. (See 3 Davis, Administrative Law (1958) § 19.01, p. 6.)

■ "[T]he exhaustion of administrative remedies 'requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention'" (*Wilkinson* v. *Norcal Mutual Ins. Co., supra*, 98 Cal.App.3d at pp. 313-314) in the appropriate manner rather than by seeking to bypass the entire administrative procedure.

■ Nothing presented in the record on appeal bears out the appellants' contention that the Commissioner denied the relief prayed for against either of the respondent insurance companies, or more importantly, that he even ruled on the petition in that regard. The proposed "Findings and Recommendations" adopted by the Commissioner as his "Findings and Recommendations" on December 20, 1979, do not constitute a ruling against these respondents. Nor did the appellants plead *facts* in their consolidated complaint showing that they, or either of them, exhausted their effort either before the Commissioner or in the superior court to compel the Commissioner to rule on their allegations as to the respondents' specific unlawful practices they charge in that complaint.

These consolidated cases had been stayed in the court below in order to allow appellants to exhaust their available administrative remedies before the Commissioner which also allowed them to seek judicial inter-

vention to compel the Commissioner to rule on those allegations if he proved recalcitrant. As they allege in paragraph 41 of the complaint, they filed a petition for a hearing before the Department of Insurance and the Commissioner pursuant to Insurance Code section 1858 et seq. and otherwise ... raising all the issues alleged and raised by the complaint. They also alleged in that paragraph that "Defendant Kinder [Commissioner] issued his findings, decision and ruling, denying the relief prayed for."

The appellate record does not bear out their allegation of a denial by the Commissioner of the relief prayed for; nor does it show any effort to seek judicial intervention to compel a ruling as to these respondents and the specific unlawful practices alleged after the decision of the Commissioner issued.

In view of our conclusion that the appellants have failed to exhaust the appropriate available administrative procedures and the appropriate judicial method of compelling the administrative agency to carry out its plain duties with respect to the alleged unlawful practices of these respondents, it is unnecessary to discuss the other contention of the parties. We conclude that the trial court did not abuse its discretion in sustaining respondents' demurrers to the only two causes of action directed against them in the consolidated complaint and in dismissing the action as to them, especially in view of the long history of this case and the prior attempts to state causes of action against respondents without exhausting these administrative remedies.

The judgment (order of dismissal) is affirmed.

Woods, P. J., and Ashmann, J.,* concurred.

On June 11, 1982, the opinion was modified to read as printed above.

---

*Assigned by the Chairperson on the Judicial Council.