[No. B025114. Second Dist., Div. Five. Oct. 23, 1987.]

C.H.B. FOODS, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

822

**COUNSEL**

O'Neill, Huxtable & Abelson and Francis H. O'Neill for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Amanda F. Susskind, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**FEINERMAN, P. J.**—This is an appeal from the trial court's dismissal of appellant's case for failure to exhaust its administrative remedies before the assessment appeals board (Board). Appellant contends that the Board lacked jurisdiction to determine whether the assessor had improperly placed certain of appellant's personal property on the unsecured tax roll and that the court therefore erred in dismissing the case. We affirm the judgment.

## BACKGROUND

Appellant is the holder of a possessory interest in harbor lands owned by the City of Los Angeles. In assessing appellant's property for the tax year 1978-1979, the county assessor placed the appellant's land and improvements on the secured tax roll and its trade fixtures and personal property on the unsecured tax roll. At appellant's request, the assessor cancelled the unsecured tax bill and placed the trade fixtures on the secured roll. For the tax year in question, the assessor refused, however, to transfer appellant's personal property to the secured roll. The tax rate on unsecured property was considerably higher than that for secured property.[1]

In 1983, appellant filed a complaint for refund of unsecured property taxes, without first having appealed the assessor's decision to the Board.

## DISCUSSION

■ Appellant contends that the Board's review of taxpayer appeals is limited to matters of property valuation and that it lacked jurisdiction to determine whether the assessor abused his discretion in placing certain of appellant's personal property on the unsecured tax roll. Appellant argues that it would have been futile to go before the Board and that the trial court therefore erred in dismissing its complaint for failure to exhaust administrative remedies.

■ Ordinarily, an aggrieved taxpayer must exhaust available administrative remedies before resorting to the courts for relief from an erroneous

---

[1] In June 1978, the people of California enacted, by initiative, article XIII A of the California Constitution. Effective July 1, 1978, the ad valorem tax rate on property was not to exceed 1 percent of its full cash value, except for that amount needed to pay interest and redemption charges on prior indebtedness approved by the voters. For the tax year of 1978-1979, the tax rate for real property on the secured tax roll was 4.6890 per $100 of assessed value. Assessed value was 25 percent of full cash value.

However, article XIII, section 12 of the Constitution, which was in effect before article XIII A, provided that property on the unsecured assessment roll would be taxed at the rate in effect the preceding tax year. For the preceding tax year of 1977-1978, the applicable tax rate was 13.4648 per $100 of assessed value, based on the 25 percent assessment ratio.

assessment of property taxes. (*Stenocord Corp* . v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966]; *Westinghouse Elec. Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 32, 36 [116 Cal.Rptr. 742].) Prior appeal to the local administrative board of equalization is not required, however, in instances where the facts are undisputed *and* the property assessed is tax-exempt, outside the jurisdiction or nonexistent, or where the "assessment is void for failure to follow statutory procedure." (*Westinghouse Elec. Corp.* v. *County of Los Angeles, supra,* 42 Cal.App.3d at pp. 36-37.)

■ No factual question exists here as to the market value of the property in question and appellant does not argue that its property was tax-exempt, outside the jurisdiction, or nonexistent. Rather, appellant contends that the assessor abused statutory procedure by placing its personal property on the unsecured roll without first determining whether appellant's real property on the secured roll was of sufficient value to assure payment of its personal property taxes. (Rev. & Tax. Code, § 109.)[2]

Appellant maintains that it had ample real property to secure payment of its personal property taxes,[3] but that the assessor had a "policy" of not securing personal property when a governmental agency owned the land upon which the property was located. Appellant further argues that this policy was discriminatory because in cases involving taxpayers such as banks, gas stations and defense industries, the assessor allowed personal property to be secured by real property, even when personal property taxes exceeded the value of the real property by which they were secured.

■ Although there is some authority for the rule that the exhaustion requirement does not apply when constitutional or jurisdictional issues or questions of law are raised, this is not the rule in California. (*Morton v. Superior Court* (1970) 9 Cal.App.3d 977, 984 [88 Cal.Rptr. 533], questioned on other grounds in *Sunnyvale Public Safety Officers Assn.* v. *City of Sunnyvale* (1976) 55 Cal.App.3d 732, 735 [127 Cal.Rptr. 863]; see also *Roth* v. *City of Los Angeles* (1975) 53 Cal.App.3d 679, 687 [126 Cal.Rptr. 163].) California case law has long provided that resort to the appropriate board of equalization is necessary even when the error alleged is one of property classification and where the tax is assailed as being discriminatory and in violation of constitutional or statutory mandates. (*Security-First Nat. Bk* . v.

---

[2] Revenue and Taxation Code section 109 defines the "secured roll" as "that part of the roll containing State assessed property and property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure payment of the taxes." The remainder of the assessment roll is the "unsecured roll." (Rev. & Tax. Code, § 109.)

[3] Appellant states that the valuation of its real property was $10,766,400 and that the taxes on its personal property was $484,892.99.

*County of L.A.* (1950) 35 Cal.2d 319, 321 [217 P.2d 946] (*Security-First National*); see also *Bank of America* v. *Mundo* (1951) 37 Cal.2d 1, 4 [229 P.2d 345] (*Bank of America.*)

During oral argument, appellant tried to distinguish the *Security-First National* and *Bank of America* cases by arguing that a valuation issue was intertwined with a classification issue in each of those two cases and that the holdings of those cases should not be applied to a pure discriminatory classification issue as posited in this case. We are unpersuaded by appellant's argument.

In *Security-First National,* the plaintiff contended that its bank vault doors and counterlines were constitutionally "exempt" from taxation and that exhaustion of administrative remedies before the board of equalization was therefore unnecessary. The court held that although plaintiff would ordinarily be excused from paying taxes because similar property of others had been systematically misclassified as personalty, this did not mean that plaintiff's property was tax exempt, or that resort to the board of equalization was rendered unnecessary by an error in such property classification. The court continued by stating that the board of equalization could have eliminated the discrimination by "directing the assessor to *enter the misclassified fixtures owned by others as real property* upon the assessment roll . . . , in which case plaintiff would not be excused from paying . . . the . . . [disputed] taxes." (Italics added.) (*Security-First National, supra,* 35 Cal.2d at p. 322.)

In *Bank of America,* the plaintiff also contended that the assessor had discriminated against it and "intentionally and systematically favored other property owners." (*Bank of America, supra,* 37 Cal.2d at p. 3.) The plaintiff specifically alleged that the valuation on its building included vault doors and counterlines which were classified as improvements, and that similar articles were classified as personal property in nonbanking institutions. Although appellant in the instant case suggests that this was therefore a valuation issue, the court frames *Bank* of *America's* complaint as one going to classification of property. (*Id.* at p. 4.) To the extent that overvaluation was involved, this stemmed from a claim of discriminatory classification.

■ As noted above, the appellant in the case at bench is similarly claiming that it has been overtaxed because of discriminatory classification. However, what appellant fails to recognize is that a board of equalization may consider and act on matters of law. While the process of equalization primarily involves application of valuation principles, it may also involve application of legal principles which define a taxpayer's property interest. (*County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32

Cal.App.3d 654, 664 [108 Cal.Rptr. 434].) "The existence of legal issues affects the nature and extent of review by the courts, not the jurisdiction of an equalization board." (*Ibid.*)

■ Clearly, the exhaustion requirement is inapplicable "where an effective remedy is *wholly* lacking." (*County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77, 86 [182 Cal.Rptr. 879].) ■ However, this is not the case here. Appellant's claim of discriminatory misclassification of its personal property as unsecured property should properly have been made before the Board before resort to the courts.

The judgment is affirmed.

Hastings, J., and Boren, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 6, 1988.