[No. C024496. Third Dist. Oct. 27, 1997.]

SUNRISE RETIREMENT VILLA et al., Plaintiffs and Respondents, v. BRUCE M. DEAR as County Assessor, etc., Defendant and Appellant.

COUNSEL

Anthony J. LaBouff, County Counsel, and Gerald O. Carden, Chief Deputy County Counsel, for Defendant and Appellant.

Blackman & Blackman and David M. Blackman for Plaintiffs and Respondents.

OPINION

**CALLAHAN, J.**—Revenue and Taxation Code section 51.5 (all further unspecified statutory references are to this code) requires a county tax assessor to correct errors in the tax roll which are not based on judgment as to value in the same assessment year they are "discovered." This case calls on us to plumb the murky waters of available remedies when the county assessor refuses the taxpayer's request to correct such an error eight years after it was allegedly made and the normal time for appeal has expired.

In 1986 the Placer County Assessor (Assessor) determined there had been a change in ownership on property owned by plaintiffs to trigger a new "base year" for purposes of property valuation under article XIII A of the California Constitution. The determination triggered a supplemental assessment and was reflected in valuations for succeeding years.

In 1994 plaintiffs discovered facts which they claimed showed the Assessor had erred in determining that ownership had changed. After failing to persuade the Assessor, plaintiffs filed an appeal with the Placer County Assessment Appeals Board (AAB) to change the assessment. The AAB ruled it had no jurisdiction because the application was filed more than four years after the Assessor redetermined the base-year value (§ 80, subd. (a)(3)).

Plaintiffs thereafter filed this petition for writ of mandate in superior court, asking that the court either (1) direct the Assessor to correct its 1986 base-year value to reflect no change in ownership, or (2) compel the AAB to

set aside its order denying the application for lack of jurisdiction and set the matter for a hearing on the merits.

The trial court granted the first prayer for relief. On this appeal, we will conclude it should have granted the second.

## BACKGROUND

The properties which are the focus of this appeal are two separately assessed parcels known in rolls of the Assessor as Parcel No. 470-010-045 (Parcel 045) and Parcel No. 470-010-001 (Parcel 001). Prior to 1986, record title to Parcel 001 stood in the name of Edward and Nancy Latin (Latin), David Lonon (Lonon), and Michael Klein (Klein). Parcel 045, on the other hand, stood in the name of Latin only under a 1977 grant deed.

In September 1986 Klein, Latin, and Lonon formed a partnership known as Sunrise Retirement Villa (SRV) whose purpose was to construct and operate a retirement facility on the parcels.

In 1986 the three partners deeded Parcel 001 to SRV and Latin deeded Parcel 045 to SRV.[1] On the basis of the documentation available, the Assessor determined there had been a change in ownership for both parcels in 1986 and reassessed the property. (§ 60 et seq.) Supplemental assessments were levied and revised assessment notices were sent.

Lonon died in 1990. During a probate of his estate, one of the surviving partners of SRV reviewed the large tax bill owed by the partners to Placer County and discovered the 1986 change in ownership reassessment. SRV promptly reported to the Assessor's office that a mistake had been made with respect to both parcels, maintaining the deeds conveying title to SRV merely changed the form of ownership from the individual partners to the partnership.

The 1986 deed for Parcel 001 showed a transfer from Lonon, Klein, and Latin to SRV, but the deed for Parcel 045 showed a conveyance only from Latin to SRV. On this basis, the Assessor concluded that an error had been made in its change of ownership determination for Parcel 001 (§ 62, subd. (a)(1)), but there was insufficient evidence that Klein and Lonon coowned Parcel 045 equally with Latin such that in fact no change of ownership

---

[1]The chain of transactions is actually much more complicated than described here, involving a split of Parcel 045 and recombination with other parcels of land, and a mistaken deed recorded in 1980. For clarity, we present a simplified version of the facts essential to the disposition of the appeal.

occurred with respect to the 1986 deed for that parcel. The Assessor made the correction to the assessment roll and issued a refund on Parcel 001, but refused to change the roll for Parcel 045.

There ensued a period of correspondence and meetings between SRV and the Assessor during which SRV provided documentation in support of its claim that the subject property had been coowned by the individual partners in SRV since the middle of 1982 notwithstanding that record title stood solely in the name of Latin at the time of the 1986 deed. One of the documents was a superior court judgment obtained by stipulation on a complaint by SRV to quiet title. The judgment was obtained in response to county counsel's statement to SRV's attorney that "[c]ourt judgments or decrees concerning this property" would provide "crucial" support to the claim of continuous coownership. The judgment obligingly recited that "ownership of the subject property remained in the Latins, Lonons, and Kleins from the middle of 1982 until the property was transferred on October 20, 1986 to [SRV]."

The judgment failed to persuade the Assessor to change his position that there was insufficient evidence that Klein and Lonon held partnership interests in the property prior to 1986. SRV then appealed his decision to AAB by filing an application for a changed assessment.

The application came before the AAB for an administrative hearing. At the hearing, a motion was made, prior to the introduction of evidence, to refuse to hear the appeal on jurisdictional grounds, because SRV's application was made beyond the four-year limitation period for challenging base-year value reassessments established in section 80, subdivision (a)(3) (section 80(a)(3)). The motion carried and the appeal was "denied" for lack of jurisdiction.

Plaintiffs SRV and its surviving partners then commenced this action for writ of mandate in superior court against both the Assessor and the AAB. The essential thrust of the petition is: (1) under section 51.5, errors in the assessment roll which are not based on judgment as to value (hereafter nonjudgmental errors) may be corrected anytime during the year in which they are discovered; (2) SRV had conclusively shown the Assessor committed such an error in refusing to correct the roll upon proof that no change of ownership occurred; (3) the Assessor abused his discretion in refusing to carry out his "mandatory duty" to correct the error; and (4) the AAB abused its discretion in refusing to hear the appeal on statute of limitations grounds.

Plaintiffs prayed for either a peremptory writ commanding the Assessor to correct the 1986 base-year value determination and change the rolls accordingly, or directing the AAB to set aside its previous order and hear the appeal.

After overruling the Assessor's demurrer, receiving voluminous evidence, and holding a hearing, the court issued a peremptory writ ordering the Assessor to make the correction. In its written ruling, the court placed crucial reliance on the judgment decreeing that the SRV partners had continuously owned the property since 1982. In the words of the court: "[The] judgment in rem was binding on all the world, and the Assessor was not entitled to disregard it."

APPEAL

I

*The Parties' Positions*

The Assessor argues: (1) issuance of the writ was improper because plaintiffs' remedy was to commence a refund action and the writ violates the statutory prohibition on injunctive relief preventing or impeding the collection of property taxes; (2) section 51.5 does not override the four-year limitation on hearing change of ownership disputes, and thus the AAB was correct in dismissing the appeal; and (3) the trial court erred by substituting its discretion for the Assessor's and deciding the ultimate issue by way of motion without an administrative record or an evidentiary hearing.

Plaintiffs respond that (1) section 51.5 authorizes correction of a nonjudgmental error in the tax year it was discovered, regardless of how long ago the error was made, (2) SRV had a right to hearing before the AAB and the trial court's determination that no adequate remedy existed should not be overturned, (3) the order does not violate the prohibition on injunctive relief since it does not bar payment or collection of any taxes, and (4) the court properly decided as a "question of law" the issue of whether the property had changed ownership based on the conclusive evidence presented to it.

Before addressing these contentions, we must remember the procedural context in which this case comes to us: The Assessor and the taxpayer became embroiled in a dispute over whether the 1986 roll should be changed based on the "discovery" of an alleged nonjudgmental error (i.e. change of ownership determination), the taxpayer appealed to the AAB and the AAB punted the issue by tossing out the appeal for lack of jurisdiction.

The present action was styled as one for administrative mandamus under Code of Civil Procedure section 1094.5. ■ However, administrative mandate under this section will lie only to challenge the validity of a *final administrative adjudication* vested in an inferior administrative tribunal as

the result of a proceeding when (1) a hearing is required, (2) evidence is required to be taken, and (3) discretion in the *determination of the facts* is vested in an administrative agency. (Code Civ. Proc., § 1094.5, subd. (a); Cal. Civil Writ Practice (Cont.Ed.Bar 1997) § 6.1, p. 189 (Cal. Civil Writs).)

If the administrative agency is empowered to decide the factual issue in the first instance and it erroneously fails or refuses to do so, either administrative or traditional mandate is available to compel the agency to hold a hearing. (See Cal. Civil Writs, *supra*, § 6.5, p.· 197; *County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 673 [108 Cal.Rptr. 434] (*County of Sacramento*).) In such cases the proper remedy is to order the agency to perform its statutorily mandated duty—but the court may not step into the shoes of the agency and perform its function for it, since mandate does not lie to control the discretion conferred in a public agency. (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

Once the administrative process has been exhausted, there are avenues for judicial review. However, the court cannot leapfrog this process by holding its own mini-trial before the administrative agency has exercised its jurisdiction in the first instance: "These agencies have been vested with quasi-judicial authority to hold hearings, take evidence, and render a decision based upon findings of fact. [Citation.] ▆▆▆▆ The right to a limited review of that decision by a reviewing court has also been provided. (Code Civ. Proc., § 1094.5.)[2] To allow the parties to challenge every administrative decision with another trial de novo would be a waste of both administrative and judicial resources, and the administrative hearings would be nothing more than perfunctory gestures." (*Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353, 366 [244 Cal.Rptr. 240].)

It therefore follows that if the AAB erred in refusing to exercise its own jurisdiction, the trial court could have and should have issued the writ to compel it to so act. (*County of Sacramento, supra,* 32 Cal.App.3d 654 [assessment appeals board erroneously ruled it had no jurisdiction]; *Main & Von Karman Associates* v. *County of Orange* (1994) 23 Cal.App.4th 337, 343-344 [28 Cal.Rptr.2d 432] [assessment appeals board used wrong methodology and refused to admit competent evidence; mandate issued to conduct further proceedings]; *California Correctional Peace Officers Assn.* v.

---

[2]We note that the mechanism for judicial review of decisions by a county assessment appeals board is significantly different from that of other administrative agency decisions. Ordinarily the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund. (*County of Sacramento, supra,* 32 Cal.App.3d at p. 672; Cal. Administrative Mandamus (Cont.Ed.Bar. 1989) § 3.16, p. 86.)

*State Personnel Bd.* (1995) 10 Cal.4th 1133, 1150 [43 Cal.Rptr.2d 693, 899 P.2d 79] [administrative agency failed to adjudicate grievance within the statutory time limit].)

II

*Section 51.5 and the Statute of Limitations*

We now turn to the substantive question of whether the AAB correctly dismissed the appeal due to expiration of the statute of limitations set forth in section 80(a)(3). Preliminarily, we overview the pertinent law as concisely summarized in *Osco Drug, Inc.* v. *County of Orange* (1990) 221 Cal.App.3d 189 [272 Cal.Rptr. 14]:

"Article XIII A of the California Constitution revised the real property taxation system by limiting taxes to 1 percent of a property's base-year value compounded by an inflation factor. Base-year values are reestablished only if property is purchased, is newly constructed, or if there is a change in ownership. [¶] Property owners have four years within which to appeal new base-year value determinations by filing an application for reduction with the county assessment appeals board. (§§ 80, subd. (a)(3), 1603.) Should the application result in a reduction in the base-year value, the taxpayer may seek a refund of taxes paid. (§§ 5097, 5097.2.) [¶] There is a distinction between the reduction in a base-year value and a right to a refund of taxes. The base-year value is a control figure from which an assessment is determined. The correction of the base-year value allows the assessor to determine whether there has been an overassessment or an underassessment. Thereafter, an application must be made for a refund." (221 Cal.App.3d at pp. 192-193, fn. omitted.)

Prior to section 51.5, if the assessor found that a property had been underassessed, he could correct the tax roll and make adjustments in the form of additional taxes, called "escape assessments." However, escape assessments could only be issued for a limited time, usually four years, from the original assessment. (*Montgomery Ward & Co.* v. *County of Santa Clara* (1996) 47 Cal.App.4th 1122, 1129 [55 Cal.Rptr.2d 261]; § 532.)

In the case of *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1180-1182 [224 Cal.Rptr. 285] (*Dreyer's*) the Court of Appeal ruled that the base-year value for any given property could not be

changed after expiration of the four-year statute of limitations provided by the statute governing escape assessments. The Legislature took action to overrule *Dreyer's* by enacting section 51.5. (Stats. 1987, ch. 537, § 2, p. 1835.)

Subdivision (a) of section 51.5 (§ 51.5(a)), which is at the heart of this appeal, provides: "Notwithstanding any other provision of the law, any error or omission in the determination of a base year value . . . which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered." If the correction reduces the base-year value, appropriate refunds may be granted; if the correction increases the base-year value, escape assessments may be levied. (§ 51.5, subd. (d).)[3]

In the preamble to the legislation, the Legislature "finds and declares that fairness and equity require that county assessors have express authority to make corrections to property tax base-year values whenever it is discovered that a base-year value does not reflect applicable constitutional or statutory valuation standards or the base-year value was omitted. Any limitations imposed upon the assessor's authority to correct these errors would result in a system of taxation which, on the one hand, denies the benefits of Article XIII A of the California Constitution to some taxpayers where the barred error or correction would reduce the base-year value and, on the other hand, encourages even the most honest person to engage in deception and conceal-ment in order to delay discovery of changes in ownership or new construc-tion beyond the point where a correction of the base-year value can be made." (Stats. 1987, ch. 537, § 1(a), p. 1834; Historical and Statutory Notes, 59 West's Ann. Rev. & Tax. Code (1997 pocket pt.) § 51.5, p. 6.)

There is no dispute that an erroneous "change in ownership" determina-tion constitutes an error not based on value judgment within the meaning of section 51.5(a). Unquestionably, that section gives the assessor the *authority*, should he choose to exercise it, to reverse an inaccurate change of ownership determination whenever it is "discovered," and to revise all base-year values accordingly, as the Assessor in fact did in the case of Parcel 001.

What happens, however, when the assessor refuses to make a section 51.5(a) correction even after the taxpayer produces evidence purporting to

---

[3]Section 51.5 also has provisions for correcting value judgment errors in base-year values (subds. (b) and (c)), but sets a four-year backward limit on such corrections in most cases. (See *Sea World, Inc.* v. *County of San Diego* (1994) 27 Cal.App.4th 1390, 1404 [33 Cal.Rptr.2d 194] (*Sea World*).) These provisions are not at issue on this appeal.

show such an error was committed, as occurred in this case? Lacking the force of persuasion, does the taxpayer have a remedy? In order to answer that question we need to look at the statutory procedure for appealing base-year value determinations.

■ Local boards of equalization (either a county assessment appeals board or the board of supervisors) are established by the California Constitution to hear appeals from decisions of the tax assessor. (Cal. Const., art. XIII, § 16; see 2 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1997) § 26:01, pp. 1-2 (Ehrman).)

The appeals process is commenced by filing a written application for changed assessment with the local board. (§ 1603.) The board then sets the matter for hearing at which it receives evidence. (§ 1604.) This appeals process is essential to filing a subsequent claim for a refund in superior court, and skipping this step will usually result in the dismissal of the suit for failure to exhaust an available administrative remedy. (Ehrman, *supra*, § 30:01, pp. 1-2; see *C.H.B. Foods, Inc.* v. *County of Los Angeles* (1987) 195 Cal.App.3d 821 [241 Cal.Rptr. 18] [appeal to board necessary even where contested issue is one of law].)

The code also contemplates that disputes between the assessor and the taxpayer regarding ownership change reassessments be resolved by the local appeals board before resort is made to the courts. Section 1605.5, subdivision (a)(1) states: "The county board shall hear applications for a reduction in an assessment in cases in which the issue is whether or not the property has been subject to a change in ownership, . . ." Subdivision (a)(3) ensures that such adjudication does not affect the taxpayer's later right to a trial in superior court. The AAB thus has been given jurisdiction expressly to adjudicate change of ownership disputes. Here, the AAB did not adjudicate the change of ownership dispute because it ruled the application was barred by section 80(a)(3).

■ While it is true that this section, on its face, imposes a four-year time limit on appealing base-year reassessments,[4] we must consider the impact of section 51.5 on the entire statutory scheme. The statutes must be read

---

[4]Section 80(a)(3) states: "The base-year value determined pursuant to [section 110.1, subd. (a)(2)] shall be conclusively presumed to be the base-year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment."

together to achieve a result that is reasonable and practical and comports with the apparent intention of the Legislature. (*In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1216 [57 Cal.Rptr.2d 851].)

The categorical language of section 51.5(a) evinces a clear intent to remove any and all time restrictions on correcting nonjudgmental errors in determining base-year values: *"Notwithstanding any other provision of the law*," nonjudgmental errors *"shall be corrected* in any assessment year in which the error or omission is discovered." (Italics added.)

Since the purpose of the law was to *remove* any time limits on correcting the roll based on nonjudgmental errors, reading a statute of limitations back into the law would run contrary to the express wording of the statute.

Furthermore, the legislative history of the law strongly supports the view that lifting time restrictions on correcting nonjudgmental mistakes was meant to be a two-way street, benefiting taxpayers and assessors equally.

The Senate Revenue and Taxation Committee report on Senate Bill No. 587 (1987-1988 Reg. Sess.) states, "Since it is possible for assessment errors to go either way, both in favor of and against the taxpayer, the Dreyer's case can result in higher taxes on a property due to a now-uncorrectable assessment error. *If, for example, a property is appraised too high based on incorrect information, and neither the taxpayer nor the assessor realize the error for more than four years, existing law . . . would prevent the tax from being reduced now or in any future year until the property changes ownership.*" (Comments, Sen. Rev. & Tax. Com. Dig. (Apr. 22, 1987) Sen. Bill No. 587, p. 2, italics added.) The Assembly report emphasizes that the correction "must be made in the year the error or omission was discovered, *regardless of when the valuation was originally made.*" (Bill Rep. on Sen. Bill No. 587, Assem. Com. on Rev. & Tax. (June 22, 1987) italics added.) The report also boasts of the new law's ameliorative effect on property owners: "Bill Protects Taxpayers From Overassessments. [¶] It is possible for assessment errors to occur which either underassess or overassess properties. If a property is inadvertently valued too high, and the overvaluation is not discovered within four years, under current law the tax could not be reduced until the property changes ownership. *This bill is intended to protect taxpayers from this kind of inflexibility, . . .*" (*Id.* at p. 3, italics added.)

If section 80(a)(3) were read to bar a taxpayer from obtaining relief from nonjudgmental errors more than four years after the incorrect base-year

value were established, as implied by the AAB's ruling, the result would be to grant the Assessor an *unlimited* time in which to make an upward adjustment in the base-year value due to a nonjudgmental mistake, but close the door on the taxpayer seeking a parallel downward adjustment after four years. Such a construction frustrates the intent of section 51.5 as expressed in both the language and history of the statute.

The AAB's construction also apparently overlooks the fact that when section 51.5 was enacted, section 80 also was revised. (Stats. 1987, ch. 537, § 3, p. 1836.) Subdivision (a)(4) was added, providing that any base-year value *"determined pursuant to Section 51.5"* becomes conclusive unless timely challenged. (Italics added.) If challenged, the outcome of the appeal conclusively establishes the base-year value for that year. Thus, the Legislature contemplated that the taxpayer be able to resort to the equalization process when confronted with an upward adjustment in value due to a nonjudgmental error. Logic and fairness dictate the same procedure should be available when the Assessor refuses to make a downward correction, especially in light of the clear ministerial duty imposed on him by statute to correct the tax roll in the same year any such mistake is discovered.[5]

We finally observe that section 51.5 provides an independent mechanism for correcting base-year values apart from the normal appeals procedure. (*Sea World, supra,* 27 Cal.App.4th at p. 1399.) This substantive change in the law, together with the unqualified language of section 51.5(a), supersedes any statutory time restriction on the taxpayer's right to a correction in the tax roll which otherwise might apply.

■ We conclude that section 51.5(a) errors are correctable at any time (*Montgomery Ward & Co.* v. *County of Santa Clara, supra,* 47 Cal.App.4th at p. 1133) and are not subject to the time limitations on changing base-year values imposed by prior statutes. Therefore, when the Assessor refused to make the correction, plaintiffs had the right to have that decision reviewed by the AAB and were not precluded by section 80(a)(3).

The AAB erred when it determined it had no jurisdiction over the subject matter due to the fact that more than four years had elapsed since the

---

[5]Although the phrase "discovered" suggests a unilateral act of the Assessor subject only to his control, it would be unreasonable to construe the statute to permit him to circumvent his obligation to conform the tax roll to the facts by refusing to "discover" them. Thus, the presentation to the Assessor of evidence showing a mistake was made as to base-year value would be the equivalent of such a "discovery," at least sufficient to trigger a duty to correct the roll under section 51.5.

Assessor changed the base-year value. Remand to the AAB was one of the alternative prayers for relief sought by plaintiffs and is appropriate to the facts of this case. (See discussion *ante*, pp. 955-956.) The cause must be remanded to the AAB to exercise its jurisdiction in the first instance. (*Midstate Theatres Inc.* v. *Board of Supervisors* (1975) 46 Cal.App.3d 204, 213 [119 Cal.Rptr. 894].)

III

*Disposition of Assessor's Remaining Claims*

The disposition we order moots all of the other principal objections raised by the Assessor to the judgment below.

For example, the Assessor asserts that by issuing the writ in the first instance the court improperly shortcut the refund procedure, and that plaintiffs' proper remedy was a suit for a refund. As demonstrated, remand to the AAB to hear plaintiffs' appeal neither aids nor impedes their right to seek a refund of taxes improperly collected. ▪ Correction of the base-year value figure does not automatically entitle the taxpayer to a refund. (*Osco Drug, Inc.* v. *County of Orange, supra,* 221 Cal.App.3d at p. 193.) Refunds are governed by separate provisions of the code, and the taxpayer may only recover a refund by complying with those statutes. (*Sea World, supra,* 27 Cal.App.4th at pp. 1400-1401.) As section 51.5, subdivision (d) states, if the correction reduces the base-year value, "appropriate cancellations or refunds of tax shall be granted *in accordance with this division.*" (Italics added.)

Remand to the AAB also dispenses with the Assessor's argument that the writ impermissibly enjoins or prevents the collection of property taxes. (§ 4807; Cal. Const., art. XIII, § 32.) The writ, as we will modify it, will do nothing except order the AAB to perform its duty to hear the appeal on its merits. The Assessor is not restrained from collecting taxes.

Finally, reinvesting the AAB with jurisdiction obviates the claim that, by directly ordering the Assessor to perform the correction, the trial court improperly substituted its discretion for that of the agency and decided a factual controversy without the benefit of an administrative record. The change of ownership issue will now be litigated before the AAB and presumably a complete administrative record will be developed, permitting further review if necessary.

DISPOSITION

The judgment is reversed and the cause is remanded. The trial court shall enter a new judgment issuing a peremptory writ of mandate which shall

direct the Placer County Assessment Appeals Board to vacate its decision denying plaintiffs' appeal on jurisdictional grounds and instead to hear the appeal on its merits. The parties shall bear their own costs on appeal.

Raye, Acting P. J., and Sparks, J.,* concurred.

A petition for a rehearing was denied November 24, 1997, and appellant's petition for review by the Supreme Court was denied January 14, 1998.

---

*Retired Associate Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.