Filed 8/8/25

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----


| | |
|---|---|
| DUANE H. SCEPER, | C100037 |
| Plaintiff and Respondent, | (Super. Ct. No. 22CV071) |
| v. | |
| COUNTY OF TRINITY et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Trinity County, Larry E. Hayes, Judge.* Reversed in part and affirmed in part.

Prentice Long and Amanda Uhrhammer for Defendants and Appellants.

Duane Harold Sceper, in pro. per., for Plaintiff and Respondent.


* Judge of the Monterey Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


1

In 2009, respondent Duane H. Sceper filed a lawsuit against the Trinity County Board of Supervisors (Board) seeking to transfer the base year value of property he purchased in San Diego County in 1974 to property he bought in Trinity County (County) in 2001.  The parties settled the litigation in 2012 by entering into a written agreement that the County would allow such a transfer if it later adopted an ordinance consistent with Revenue and Taxation Code section 69.5, subdivision (a)(2) or if any change in law "require[d] the County to accept such transfers."[1]  In 2020, California voters approved Proposition 19, which, among other things, expanded the ability of certain taxpayers to transfer base year property values between counties.

After the passage of Proposition 19, Sceper asked the county assessor to adjust the base year value of his property, on the ground that the new enactment reflected a qualifying change in law under the settlement agreement.  The assessor declined to do so.  Sceper sued again, and after a bench trial, the trial court found the County in breach of the settlement agreement.  The court ordered the County to specifically perform the agreement and pay Sceper approximately $90,000 in damages.

On appeal, the County argues that the settlement agreement is not enforceable because the Board lacked the authority to direct the assessor in setting base year values.  It further maintains that the County did not breach the agreement because the agreement applies only to intra-county, and not to inter-county, transfers; that the agreement does not provide for the relief Sceper seeks; that the trial court lacked jurisdiction to order specific performance; and that the court erred in considering Sceper's testimony regarding his damages.  We conclude that the Board did not have the power to direct the assessor to set the base year value for Sceper's Trinity County property, rendering the settlement agreement unenforceable.  We therefore reverse the judgment as to the breach of contract claims.

---

[1]  Undesignated statutory references are to the Revenue and Taxation Code.

BACKGROUND

Sceper owned property in San Diego County that he purchased in 1974. In 2001, Sceper bought land in Trinity County; he began building a home on that land in 2006. He finished construction in 2007 and moved into the home in July that same year. Escrow closed on the sale of the San Diego home in January 2008.

Sceper asked the Board to adopt an ordinance to transfer the base year value from his San Diego County property to the Trinity County property under section 69.5. That provision permits the transfer of base year property values between counties if the county board of supervisors adopts an ordinance meeting specific requirements. (§ 69.5.) The Board did not adopt the ordinance, and Sceper sued on behalf of himself and his wife.

Sceper and the Board settled the litigation in 2012 in a written agreement. In the agreement, Sceper agreed to dismiss his claims, and the County agreed to retroactively apply any future change in law to Sceper's situation in a provision stating: "The County agrees that should it adopt an ordinance authorizing intra-county transfers of base year values per . . . section 69(a)(2), or should any change in the law require the County to accept such transfers, the Plaintiffs will retroactively be entitled to the benefits of the adopted ordinance or change in law. For purpose[s] of this paragraph, a change in law shall be deemed to occur by adoption of a statute or regulation or by a final, binding, and published decision (i.e., one for which remittitur has issued) of the Third District Court of Appeals [*sic*] or the State Supreme Court. Should an ordinance be adopted or change in law occur, the Plaintiffs shall be entitled to transfer the base-year value of their former residence in San Diego County as existed on the date they first began occupying their current residence in Trinity County."

In 2020, California voters approved Proposition 19, which amended the California Constitution. (Cal. Const., art. XIII A, § 2.1, added by initiative, Gen. Elec. (Nov. 3, 2020).) The Legislature implemented the amendment by adding, among other statutes, section 69.6. (Stats. 2021, ch. 427, § 3.) That provision, which applies to taxpayers who

3

are over 55 years of age, among others, generally permits taxpayers meeting certain conditions to transfer the base year value of property to a newly purchased or constructed replacement dwelling and lacks the ordinance requirement for inter-county transfers imposed by section 69.5. Sceper regarded these provisions to be a "change in law" under the 2012 settlement agreement and asserted that the County was obligated under the agreement to provide him with the benefit of that change. Accordingly, Sceper sent the county assessor a letter asking her to adjust his property base year value. The assessor, who was not aware of the settlement agreement until she received Sceper's letter, disagreed with Sceper's assessment and refused his request to transfer the base year value from his San Diego home. She did not agree that Sceper satisfied the requirements for a transfer and stated that the county assessor was not controlled by the Board.

Sceper, who was over the age of 55, then filed the present action against the County, County Assessor Shanna White, and Margaret Long, an attorney who represented the County. The complaint asserted two breach of contract claims against the County, fraud in the inducement against the County and White, and intentional interference with contractual relations against White and Long. White and Long were later dismissed from the case. The three claims against the County proceeded to trial.

After hearing testimony from White, Sceper, and Derek Cole, the attorney who represented the Board in the first lawsuit, the trial court ordered closing briefing. The parties filed briefing, and the court issued a written decision.

The trial court ruled that Sceper had failed to prove fraud in the inducement but determined that he had established his claims for breach of contract. With respect to those claims, the court rejected the County's argument that the 2012 settlement agreement applied only to intra-county base year value transfers, rather than inter-county ones. The court acknowledged that the text of the agreement referred to "intra-County" transfers, but based on Sceper and Cole's testimony and contemporaneous communications about

4

the agreement, the court concluded that the parties intended for it to apply to transfers between different counties.

The trial court also rejected White's testimony that she did not think she had authority to permit the base year value transfer from the San Diego property. The court concluded: "Based on the totality of the agreement itself, along with other extrinsic evidence corroborating the intent of the parties, the County agreed to retroactively allow the transfer of Plaintiffs['] basis in their San Diego residence at the time to their new Trinity County residence if the relevant law was thereafter changed or the County enacted a new Ordinance. The law has changed allowing inter-state transfers, and Defendant's refusal to follow the agreement after the new law was enacted is a breach of that agreement. Simply said, the County's agreement[,] which in essence suspended the inter-County transfer sought by Plaintiffs in the 2009 suit for their San Diego home to their Trinity County home[,] was triggered by the new law and the County must comply with its agreement at this time."

The trial court likewise "disagree[d] with all of [the County's] arguments as to the interpretation and enforceability of" the settlement agreement. It concluded: "the Defendant, through its Assessor, can and must live up to the County's specific agreement to retroactively apply the transfer of Plaintiff[s'] basis in their San Diego home to their Trinity County home without additional requirements imposed by the new law or by the County itself. The Settlement Agreement does not call for nor allow the imposition of any new requirements or conditions on Plaintiff[s] not in effect at the time of the agreement that dealt with inter-County transfers. The Court finds that Defendant has breached its agreement with Plaintiff[s] by refusing to transfer the base year value of their former residence in San Diego County as existed on the date they first began occupying their current residence in Trinity County in 2007."

The trial court ordered the County to specifically perform its obligations under the agreement as interpreted by the court. The court also accepted Sceper's calculations

regarding his damages and awarded him past damages of $7,741.96 and future damages of $82,280.48.

The County filed a timely notice of appeal.

DISCUSSION

"In 1978, Proposition 13 amended the California Constitution to limit real property taxes to 1 percent of a property's base year value adjusted annually by an inflation factor not to exceed 2 percent of the prior year's value. . . . A property's base year value may be reestablished only if the property is purchased, is newly constructed, or there is a change in ownership." (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 9.)

"In a series of voter-enacted initiatives that followed the approval of Proposition 13, the California electorate authorized the Legislature to permit the transfer of a property's base year value to a replacement property under some circumstances." (*Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 690.) "In November 1986, the voters approved Proposition 60," which authorized legislation "to permit qualified homeowners over 55 years of age (seniors) to transfer their base year value to a replacement dwelling of equal or lesser value within their county. [Citation.] In November 1988, the voters approved Proposition 90, a further constitutional amendment enabling the transfer of base year values between counties, upon the adoption of implementing legislation and of qualifying local ordinances." (*Id.* at pp. 690-691; see § 69.5.)

In 2020, voters approved Proposition 19, which amended the California Constitution to allow "an owner of a primary residence who is over 55 years of age, severely disabled, or a victim of a wildfire or natural disaster [to] transfer the taxable value of their primary residence to a replacement primary residence located anywhere in this state, regardless of the location or value of the replacement primary residence, that is purchased or newly constructed as that person's principal residence within two years of

6

the sale of the original primary residence." (Cal. Const., art. XIII A, § 2.1, added by initiative, Gen. Elec. (Nov. 3, 2020).) The provision was implemented through section 69.6, which sets forth the requirements for such a transfer. (Stats. 2021, ch. 427, § 3.)

The sole claims at issue in this appeal are Sceper's allegations that the County breached the settlement agreement by refusing to transfer the base year value from his San Diego home. The County contends that the Board was not entitled to enter into the settlement agreement to accept the transfer of the base year value for the San Diego County property to the Trinity County property because setting base year values is properly the role of the county assessor, whom the Board does not control. As such, the County contends that the settlement agreement is void and unenforceable. We agree.

The county assessor is an elected official. (*Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1113, fn. 9.) A county assessor has the duty "to prepare the local assessment roll [citation] and to 'assess all property subject to general property taxation at its full value.' " (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 17 (*Plaza*).) If a taxpayer challenges a tax assessment, the appeal is heard by the local board of equalization, which can be a county assessment appeals board or the board of supervisors meeting as a board of equalization. (*Id.* at pp. 22-23, 26; *Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 958.) Because the "office of county assessor is elective . . . [t]he supervisory authority of the board of supervisors is . . . limited to ensuring that the assessor faithfully performs the duties of the office, and does not permit the board to control, directly or indirectly, the manner in which the duties are performed." (*Connolly*, at p. 1113, fn. 9.) Thus, for instance, a county may not be compelled to grant a property tax exemption in the first instance, "that duty, when it exists, being one that the assessor must perform." (*Id.* at p. 1115.)

In *Plaza*, *supra*, 72 Cal.App.4th 1, the Sixth District Court of Appeal considered the respective roles and responsibilities of the county assessor, county board of

supervisors, and courts in disputes concerning the setting of a property's base year value. In that case, a taxpayer purchased property and sued the county board of supervisors to obtain a lower base year value for the property. (*Id.* at pp. 8-11.) The parties agreed to a stipulated judgment establishing a reduced base year value for the property with a fixed rate of inflation. (*Id.* at pp. 7-8.) The county assessor intervened and filed a motion to vacate the judgment. (*Id.* at p. 11.) Considering whether the trial court had power to approve the judgment, the *Plaza* court explained that, " ' "while sitting as a board of equalization, the county board of supervisors is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution" [citation] with "special expertise in property valuation." ' " (*Id.* at p. 23.) Thus, "[t]he county boards of equalization, rather than the courts, are the proper tribunal for exercising judgment on valuation questions concerning individual assessments on the local roll." (*Ibid.*)

Because the authority to assess individual property values resides with the board of equalization, the *Plaza* court concluded that the stipulated judgment "improperly invaded the constitutional authority of the Board of Equalization and granted relief which the court had no authority to grant under any circumstances. [¶] The Board of Supervisors, acting on behalf of the County, and Plaza Hollister could not confer jurisdiction upon the court to equalize individual assessments. [Citations.] The fact that the Board of Supervisors constituted the Board of Equalization is irrelevant since the Board of Supervisors was not acting as a county board of equalization when it entered into the stipulation on behalf of the County." (*Plaza*, *supra*, 72 Cal.App.4th at p. 26.) For that reason, among others, the court determined that the stipulated judgment was void. (*Id.* at pp. 33, 36.)

We conclude that a similar analysis applies here. As the County notes and Sceper does not dispute, there is no indication in this case that the Board was sitting as a board of equalization when it approved the 2012 settlement agreement. In that agreement, the Board promised to set the base year value of Sceper's Trinity County property at the

value of the San Diego County property. Thus, as in *Plaza*, the agreement "represents an exercise of judgment as to value," and the Board lacked authority to grant the agreed-upon relief. (*Plaza*, *supra*, 72 Cal.App.4th at p. 26.) The agreement is therefore void and unenforceable. (*Id.* at p. 33; see *Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 783 ["A contract entered into by a local government without legal authority is 'wholly void,' ultra vires, and unenforceable"].) And because the agreement is void, it could not form the basis for a breach of contract claim. (*R.M. Sherman Co. v. W.R. Thomason* (1987) 191 Cal.App.3d 559, 563 ["If the contract was truly void it created no right or claim whatsoever: 'A void contract is no contract at all; it binds no one and is a mere nullity' "].) We thus need not proceed to consider the County's other claims of error as to the interpretation of the agreement and the testimony regarding the agreement.

Sceper contends that *Plaza*, which involved the setting of a base year value, and *Connolly*, which addressed a tax exemption, are inapplicable because neither case dealt with the transfer of base year values. We disagree because, as noted above, the Board's supervisory authority over the assessor does not permit it to control how the assessor performs any of her office's duties. (*Connolly v. County of Orange*, *supra*, 1 Cal.4th at p. 1113, fn. 9; *Hicks v. Board of Supervisors* (1977) 69 Cal.App.3d 228, 242 ["board has no power to perform county officers' statutory duties for them or direct the manner in which duties are performed"].) And transfer of base year values is a duty assigned to the county assessor. (See §§ 69.6, subd. (e)(1) [county assessor responsible for approving base year value transfer requests under § 69.6]; 69.5, subd. (h)(1) [same as to § 69.5].) *Transferring* the base year value is thus indistinguishable from *setting* the base year value when determining whether the Board had the authority to compel the assessor to act.

Finally, in the conclusions to both its opening and reply briefs, the County requests "costs and attorneys' fees associated with the defense of this case." Although costs are typically awarded to the prevailing party on appeal, such an award does not include

9

attorneys' fees. (Cal. Rules of Court, rule 8.278(a)(1) & (d)(2).) Moreover, the County offers no argument or legal authority for its attorneys' fees request, and we thus need not consider it. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

## DISPOSITION

The judgment as to the breach of contract claims is reversed. In all other respects the judgment is affirmed. The County shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


/s/_____
FEINBERG, J.


We concur:



/s/_____
ROBIE, Acting P. J.



/s/_____
MESIWALA, J.


10