[No. G007961. Fourth Dist., Div. Three. June 13, 1990.]

OSCO DRUG, INC., Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Stephens, Berg, Lasater, Schulman & Rogers, Mark G. Ancel and Jeffrey P. Guyton for Plaintiff and Appellant.

Adrian Kuyper, County Counsel, and David R. Chaffee, Deputy County Counsel, for Defendants and Respondents.

OPINION

**SONENSHINE, Acting P. J.**—We are asked to decide whether a downward adjustment to a base-year value on the current tax roll entitles a taxpayer to a refund of taxes paid for years prior to the adjustment. We conclude it does not.

### I.

Following a change in ownership in November 1980 (Rev. & Tax. Code, § 64, subd. (c)), two parcels of real property owned by Osco Drugs, Inc., were reassessed by the Orange County Assessor. The new base year for both properties became 1981.

In 1984, Osco filed an application for change in the 1984 secured roll assessment, controverting the assessor's market valuations. After Osco and the assessor stipulated to recalculated 1984 full values, the assessment appeals board directed the assessed values be reduced and enrolled on the

1984 tax roll. The properties' base-year values were also reduced and enrolled on the 1984-1985 tax roll.

Osco thereafter filed a claim for refund for the 1981 through 1983 tax years.[1] When the claim was deemed denied, Osco filed suit against the County of Orange and the cities of Santa Ana and Tustin.

A judgment pursuant to stipulation of facts was granted in favor of defendants. The trial court found Revenue and Taxation Code section 80, subdivisions (a)(3) and (a)(5)[2] allowed reduction in assessments only for the year in which the appeal was taken and prospectively thereafter, but not retroactively. This appeal followed.

## II.

Article XIII A of the California Constitution revised the real property taxation system by limiting taxes to 1 percent of a property's base-year value compounded by an inflation factor. Base-year values are reestablished only if property is purchased, is newly constructed, or if there is a change in ownership.[3]

---

[1] Osco sought refunds for three tax years: 1981-1982, 1982-1983, and 1983-1984. These tax years will be referred to herein as 1981, 1982 and 1983, respectively.

[2] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

Section 80 provides, in pertinent part: "(a) An application for reduction in the base-year value of an assessment on the current local roll may be filed during the regular filing period for that year as set forth in Section 1603 or Section 1840, subject to the following limitations: . . . (3) The base-year value determined pursuant to paragraph (2) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base-year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment. . . . [¶] (5) Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter."

Section 80 was amended in 1987 to reflect the addition of section 51.5. The amendment left section 80 intact, except that paragraph (4) of subdivision (a) became paragraph (5). We refer to the amended version of section 80 to maintain consistency with the new numbering.

[3] Further references to article XIII A are to the California Constitution.

Article XIII A, section 1, subdivision (a) provides, in pertinent part: "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property." Pursuant to section 2, subdivision (a) of the article, "[t]he full cash value means . . . the appraised value of real property when . . . a change in ownership has occurred after the 1975 assessment."

Section 110.1 provides, in part: "(a) For purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution, 'full cash value' of real property, including possessory interests in real property, means the fair market value as determined pursuant to Section 110 for either of the following: [¶] (1) The 1975 lien date. [¶] (2) For property which is purchased, is newly constructed, or changes ownership after the 1975 lien date, either of the following:

Property owners have four years within which to appeal new base-year value determinations by filing an application for reduction with the county assessment appeals board. (§§ 80, subd. (a)(3), 1603.) Should the application result in a reduction in the base-year value, the taxpayer may seek a refund of taxes paid. (§§ 5097, 5097.2.)

There is a distinction between the reduction in a base-year value and a right to a refund of taxes. The base-year value is a control figure from which an assessment is determined. The correction of the base-year value allows the assessor to determine whether there has been an overassessment or an underassessment. Thereafter, an application must be made for a refund. It does not follow that a reduction in a later year's base value requires a similar lowering of previous years' values.

Determining whether Osco is entitled to a refund predicated on a base-year value reduction is actually a two-step process. We must first determine the year in which the base-year value reduction became *effective*. Then, having established the effective date, we must examine whether Osco has a right to a refund and, if so, if it timely filed its claim.

### III.

To determine the year in which the reduction in the base-year value became effective, we look first to the language of the statute. Section 80, subdivision (a)(3) provides: "Once an application [for reduction in the base-year value] is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for *that* assessment." (Italics added.) The same subdivision also states application for reduction must be filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years.

Osco maintains the base-year value determined pursuant to the application is conclusively presumed to be the base-year value for the year in which it was first placed on the assessment roll—in this case, 1981.[4] Our interpretation of the language of this statute leads us to

---

[¶] (A) The date on which a purchase or change in ownership occurs. [¶] (B) The date on which new construction is completed, and if uncompleted, on the lien date. [¶] (b) The value determined under subdivision (a) shall be known as the base year value for the property. . . ."

[4] The premise underlying Osco's position is that refunds are constitutionally required when an overassessment is identified because article XIII A, section 1 requires property be assessed

believe the base-year value determined pursuant to an application is conclusively presumed to be the base-year value for the year in which the application for reduction was filed—here, 1984.

■ "[T]he intent of the Legislature is the end and aim of all statutory construction [citations] . . . ." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 95 [255 Cal.Rptr. 670, 767 P.2d 1148].) A report issued by the Assembly Revenue and Taxation Committee set forth the following example in its analysis of assessment appeals: "[I]f a taxpayer wishes to appeal as too high a base value established in 1980, the last year in which to make such an appeal would be 1984; if successful, the change would be effective for 1984-85 and *thereafter . . . .*" (1 Assem. Rev. & Tax. Com. Rep. on Property Tax Assessment, "Implementation of Proposition 13," Oct. 29, 1979, p. 35, italics added.)

■ The Legislature's intent is clearly expressed in section 80.[5] Subdivision (a)(5) provides that any reduction in assessment made as the result of a reduction in base-year value shall apply for the assessment year in which the appeal is taken and prospectively thereafter.[6] So, while new 1981 base-year values were established, they did not affect any assessment prior to 1984.

Section 81 also supports this interpretation. It provides that where real property has been assessed using a base value other than the 1975 base value, the applicant in equalization proceedings pursuant to section 1603 may establish the correct base-year value applicable to the *current* year's assessment, subject to the limitations of section 80.

---

at the same percentage of market value. Rather than contesting the constitutionality of any of the enabling statutes, Osco argues the provisions of the article are self-executing.

It is the Legislature's duty to enact statutes consistent with the Constitution. This is particularly true in the field of taxation. "[T]he absence in article XIII A of express authority for the legislative interpretation is less significant than the absence in the article of any express or necessarily implied prohibition against such interpretation." (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 624 [194 Cal.Rptr. 294].) Absent a challenge to the legislative interpretation, we presume it is valid.

[5] Osco contends the legislative history indicates the Legislature did *not* intend section 80 to prevent taxpayers from receiving refunds based on base-year value adjustments. Osco relies on the Legislature's extensive debate over and its rejection of making the provisions of Proposition 13 retroactive in favor of taxpayers, but not local government. Osco argues it is inconceivable the Legislature would, without any discussion, create such an unbalanced system of giving the government four years to levy escape assessments while precluding taxpayers from receiving refunds.

We must, however, rely on what the Legislature *did* say rather than on what it did *not* say.

[6] Osco argues that in order to harmonize section 80, subdivision (a)(5) with the constitutional scheme enacted by article XIII A, "prospectively" must be read to relate back to the year in which the base year was established, 1981. In light of the specific language of the statute, we cannot agree.

The effect of section 80 is to reduce base-year values effective only in the year or years in which the taxpayer applied for a reduction, and prospectively thereafter.[7] Thus, in our case, the reduced base-year value is effective only for 1984 and thereafter.

## IV.

Between 1981 and 1983, Osco was assessed using base-year values higher than those entered on the 1984 tax roll. Although the reduced 1981 base-year value will *not* be entered on prior rolls, the reduction reveals an overassessment for the 1981 through 1983 tax years. ■ Because the right to a refund of taxes is purely statutory, we must look to the terms of the governing statutes to determine whether Osco has a remedy and, if so, whether it properly filed its claim for refund. (*Chrysler Credit Corp.* v. *Ostly* (1974) 42 Cal.App.3d 663, 680 [117 Cal.Rptr. 167].)[8]

■ Statutes pertaining to refunds are found in section 5096 et seq.[9] The refund statutes provide fairly specific grounds for refunds. We find they do not entitle Osco to a refund of taxes paid on assessments prior to 1984.

Sections 5097[10] and 5097.2[11] establish a taxpayer's right to a refund when an application for reduction in assessment is filed.[12] Section 5097 limits a

---

[7] Osco also appeals to the equitable powers of this court. Citing *Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303 [217 P.2d 936], it maintains we must exercise our powers to correct the effect of overassessment because section 80, subdivision (a)(5) is ambiguous. There is no ambiguity. The Legislature has spoken, and it has provided a legal remedy to taxpayers seeking refunds.

[8] Prior to the implementation of article XIII A, several statutes provided for tax refunds. The primary effect of article XIII A was to impose a different value standard for assessing property. The article and its enabling statutes did not limit existing law with regard to refunds; however, the refund statutes must be read in conjunction with those statutes allowing reduction in base-year value.

[9] Osco argues a refund is authorized by section 51.5. However, that section was enacted after the initiation of this suit and does not contain express language making it retroactive. Osco maintains the statute was passed to clarify existing law and must be given the same effect as if embodied in section 80 at the time of its passage. Even if section 51.5 were applicable, it only calls for appropriate refunds, requiring analysis of the existing refund statutes.

[10] Section 5097 provides, in pertinent part: "(a) No order for a refund under this article shall be made, except on a claim: . . . [¶] (2) Filed within four years after making of the payment sought to be refunded . . . [¶] (b) An application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund. If the applicant does not so state, he [or she] may thereafter and within the period provided in paragraph (2) of subdivision (a) file a separate claim for refund of taxes extended on the assessment which applicant applied to have reduced pursuant to Section 1603 or Section 1604. . . ."

[11] Section 5097.2 provides, in pertinent part, as follows: "Notwithstanding the provisions of Sections 5096 and 5097, any taxes paid before or after delinquency may be refunded by the

refund claim to "taxes extended on the assessment which the applicant applied to have reduced pursuant to Section 1603 . . . ." Regardless of any change in base-year value, Osco filed an application for reduction of the 1984 assessment only. Thus, under section 5097, Osco would be limited to a refund of taxes extended from the 1984 assessment.

Notwithstanding section 5097, section 5097.2 provides for a refund within four years of payment if the amount paid exceeds the amount due on the property as the result of a reduction attributable to a hearing before an assessment appeals board. Osco's hearing before the assessment appeals board resulted in a reduction of the 1984 assessments. It also resulted in reduced 1981 base-year values. However, as discussed above, pursuant to section 80, those base-year values are effective only for 1984 and prospectively thereafter. Though reduction of the base-year value reveals an overassessment, section 80 prohibits the retroactive application of the adjusted base-year value. Because we cannot relate the base-year value back to 1981, the reduction attributable to the hearing before the assessment appeals board affects only 1984. ■ ■■ ■■■ ■ Therefore, Osco's failure to file for assessment reductions before 1984 precludes a refund under section 5097.2 for those prior years.[13]

county tax collector or the county auditor, within four years after the date of payment, if: . . . [¶] (e) The amount paid exceeds the amount due on the property as the result of a reduction attributable to a hearing before an assessment appeals board or an assessment hearing officer."

[12] Section 5096, subdivision (g) provides for refund of taxes paid on an assessment in excess of the value of the property as determined pursuant to an audit only and does not apply to the assessment appeals process.

[13] Even if Osco filed an application for assessment reduction in 1981 and received a base-year value reduction effective in that year, Osco did not timely file its claim for refund of all taxes paid since 1981. Both sections 5097 and 5097.2 provide a four-year statute of limitations period for tax refunds. (Code Civ. Proc., § 312.) Unless a taxpayer states in its application for reduction in assessment that the application is intended to constitute a claim for refund, the applicant must file a separate claim within four years of paying the tax. (§ 5097.) Osco filed its claim for refund on November 19, 1986, seeking refund of taxes due as far back as 1981. As such, Osco would be precluded from receiving refunds on taxes paid prior to November 19, 1982.

To receive refunds for the 1981 tax year, Osco should have filed an application for reduction in the 1981 assessment. (The deadline for assessment reduction applications is set forth in § 1603.) Had it done so, the base-year value reductions would have been effective in 1981 and thereafter. Refunds would not have been necessary in 1982 and 1983 because the assessments for those tax years would have been based on the reduced base-year values. Osco would then have four years from the date of payment of the first installment in 1981 in which to file a claim for refund.

As the deadline for filing an application for assessment reduction passed each year, Osco was precluded from receiving a refund of taxes paid in that year because any reduction to base-year value could not be applied retroactively to a prior year's assessment.

Because Osco's right to a refund is barred by the applicable refund statutes, we need not address the county's argument Osco failed to exhaust its administrative remedies.

Judgment affirmed.

Crosby, J., and Cox, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 22, 1990.

---

* Assigned by the Chairperson of the Judicial Council.