[No. B195610. Second Dist., Div. Three. Sept. 27, 2007.]

WILLIAM LITTLE, Plaintiff and Appellant, v.
LOS ANGELES COUNTY ASSESSMENT APPEALS BOARDS et al.,
Defendants and Respondents.

## COUNSEL

Ezer & Williamson and Mitchel J. Ezer for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Defendants and Respondents.

## OPINION

**KLEIN, P. J.**—Plaintiff and appellant William Little (Little) appeals a judgment denying a petition for peremptory writ of mandate. (Code Civ. Proc., § 1085.) The petition sought the issuance of a writ directing defendants and respondents Rick Auerbach, Los Angeles County Assessor (Assessor) and the Assessment Appeals Board of the County of Los Angeles, Board No. 4 (Board) (collectively, Assessor), to change the base year value for the subject real property from $480,000 to $288,000.

The essential issue presented is whether a petition for writ of mandate under Code of Civil Procedure section 1085 lies to challenge a property assessment.

We conclude a petition for writ of mandate does not lie in these circumstances, and even assuming the petition were construed as a complaint for refund of excess taxes paid, the complaint would be time-barred. Therefore, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 1991, Little purchased the subject real property, a 16-unit apartment building at 225 West Adams Boulevard in Los Angeles.

In 1992, the Assessor established the base year value for the property following the change of ownership in the amount of $700,000 ($490,000 for land and $210,000 for improvements).[1]

### 1. *First assessment appeal.*

In 1994, due to the depressed real estate market in Los Angeles, Little filed an application to reduce the assessed value of the subject property.[2]

Little's application challenged the Assessor's description of the property. The Assessor's records indicated the property consisted of two buildings, while Little contended there was only a single building on the parcel. The hearing officer referred the matter for a field check.

The record reflects the property originally consisted of two buildings, a 16-unit building as well as a four-unit building. The four-unit building was destroyed by fire prior to Little's purchase but the assessment roll had not been updated to reflect that change.

---

[1] "Under the California Constitution, article XIII A, section 1, subdivision (a), a county assessor must determine a base year value for property when it changes ownership, that is, the 'full cash value' or 'fair market value' of the property. ([Rev. & Tax. Code,] § 110.1, subd. (b).) 'For purposes of determining the "full cash value" or "fair market value" of real property . . . "full cash value" or "fair market value" is the purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction. The purchase price shall, however, be rebuttably presumed to be the "full cash value" or "fair market value" if the terms of the transaction were negotiated at arms length between a knowledgeable transferor and transferee neither of which could take advantage of the exigencies of the other . . . .' ([Rev. & Tax. Code,] § 110, subd. (b).) '[A]fter a property's base year value is determined, subsequent entries onto the assessment rolls [generally] are done pro forma without the need to exercise one's judgment as to value, simply by applying an inflation factor to the previous year's entry.' [Citations.]" (*Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 923–924 [40 Cal.Rptr.3d 703], fn. omitted (*Kuperman*).)

[2] Proposition 8, passed by the voters in 1978, provides for a temporary reduction in assessed value based on a decline in value. (Cal. Const., art. XIII A, § 2, subd. (b); *State Bd. of Equalization v. Board of Supervisors* (1980) 105 Cal.App.3d 813, 817 [164 Cal.Rptr. 739]; *County of Orange v. Bezaire* (2004) 117 Cal.App.4th 121, 136 [11 Cal.Rptr.3d 478].)

The 1994 hearing resulted in a reduction in value to $480,000, or $30,000 per unit for 16 units, which Little accepted as "reasonable."[3]

### 2. *Second assessment appeal and subsequent reassessments.*

In 1996, Little filed a second assessment appeal for a further reduction from the $480,000 base value set in 1994, based on a Proposition 8 decline in value.[4]

In 1998, the Board reduced the assessed value to $288,000.

The $288,000 value remained on the assessment roll, changing only insofar as the 2 percent annual inflationary increases. By 2003, the assessed value was $304,000.

In 2004, the Assessor issued a notice of assessed value change. The Assessor restored the 1992 base year value of $480,000, together with the compounded inflation adjustment (maximum annual adjustment of 2 percent under Prop. 13), increasing the assessment to $572,000.

### 3. *Third assessment appeal.*

On November 18, 2004, Little filed an application for changed assessment seeking a return to the previous year's valuation of $304,000. Little contended the base year value of $480,000 was incorrect, and that based on the size of the units, the correct base value was $288,000, pursuant to the 1998 assessment.

On August 8, 2005, after conducting an evidentiary hearing, the Board made a finding of fact that the property consists of 16 studio units having an average unit size of 450 square feet. However, the Board denied the application for changed assessment, ruling as follows: "The Board finds that the application before it today is clearly an invalid application. *The Board finds that the base year was properly determined on the 1992 application in*

---

[3] Little's declaration below stated he accepted the $480,000 valuation "as reasonable based on the mutual assumption of the Assessor and I that the Property contained 16 one-bedroom units." Little asserted "I did not have the time to verify the physical dimensions of each of the properties."

[4] Little contends he also sought a changed assessment on the ground the property consisted of 16 studio units, not 16 one-bedroom units, with an average of 450 square feet per unit, rather than 534 square feet. However, on the 1996 application form for changed assessment, he only checked the line for "*DECLINE IN VALUE*: The assessor's roll value exceeds the market value as of the lien date." (Italics added.) The line for "BASE YEAR: The assessor's base year and/or base year value as of (Date) _____ is incorrect" appears to have been crossed out and no date was specified on that line.

*the amount of $480,000.* Therefore the application is denied as invalid. [¶] The State Board of Equalization Rule 326 states 'The Board shall not reconsider or rehear an application or modify a decision unless . . . .' State Board of Equalization Rule 305.5(d) states '. . . Once an application is filed, the base year value determined pursuant to that application shall be conclusively presumed to be the base year value for that assessment.' " (Italics added.)

### 4. *Superior court proceedings.*

On February 17, 2006, Little filed a petition for writ of mandate, seeking to overturn the Board's denial of his third assessment appeal. A first amended petition followed on June 19, 2006.

The Assessor demurred to the petition, contending mandamus did not lie because Little had an adequate remedy at law, in the form of a complaint for refund of property taxes. The trial court overruled the demurrer.

Thereafter, Little and the Assessor filed briefs, supported by declarations and exhibits.

In essence, Little contended "The Assessor made a mistake. In setting the base year value, he erroneously determined that the Property consisted of 16 one-bedroom units valued at $30,000 each when in fact it contained 16 studio units valued at $18,000 each. In 1998, the Assessor admitted the mistake [and] agreed to correct the mistake. For the next six years the Assessor acted as if the mistaken base-year value had in fact been corrected. When the Assessor without warning in 2004 suddenly reverted to the incorrect $480,000 base-year value, [Little] initiated proceedings before [the Board] to have the mistake corrected. Since the Assessor's mistake unquestionably did not 'involve the exercise of an assessor's judgment as to value,' the incorrect base-year value was not subject to the four-year limitations period governing judgmental errors in base-year determinations, but was and here is subject to correction without limitation as to time under R&T Code Section 51.5(a)."

By way of opposition, the Assessor contended Little was not entitled to mandamus because in 1994, on the first assessment appeal, Little put in issue the Assessor's understanding of the property, the Board equalized the base year value of the property at $480,000 and Little accepted that determination.

"[Little] cannot now properly rely on a renewed challenge to the assessor's understanding of the property at the time of the [first assessment appeal] (i.e., whether the property was more accurately described as consisting of studio apartments or one-bedrooms), as a basis for setting aside the Board's Base Year value assessment."

## 5. *Trial court's ruling.*

On November 15, 2006, the matter came on for hearing. The trial court denied the petition. The statement of decision provides in pertinent part: "[Little] is entitled to mandamus [pursuant to section 51.5[5]] if the Assessor's determination of a base year value did not involve the exercise of his judgment as to value. If the determination did involve the exercise of judgment as to value, the statute of limitations expired in 1998, four years after the [first assessment appeal], and [Little] is barred from bringing this action. [¶] . . . [¶] [Little] argues that the Assessor's 1992 Base Year Value determination of $480,000 on 8/19/94 does not involve the assessor's exercise of judgment as to value; rather it's a purely objective assessment verifiable upon inspection. [¶] The Court is not persuaded. Whether the units were one-bedroom or studio, the value determination in 1994 entailed the exercise of discretion . . . . Thus, [the Assessor and the Board] considered, among other things, whether the property consisted of one building or two, 16 units or 20 units, in determining the value of the property and setting the base value of $480,000. Judgment was involved in the value determination. Furthermore, . . . even if one were to believe that for several years [Little] had no idea whether he bought one-bedroom units or studios, [he] had constructive notice of the true facts. [Little] had four years to complain about the issue."

The trial court further found that with respect to the Board's 1998 decision on the second assessment appeal, "[Little] contends the assessor made the $288,000 recommendation after inspecting the property, and stipulated [at that juncture] that the Property contained 16 studio units of 450 square feet each, and that each unit had a value of $18,000 per unit for a total of

---

[5] Revenue and Taxation Code section 51.5 states in relevant part: "(a) Notwithstanding any other provision of the law, any error or omission in the determination of a base year value pursuant to paragraph (2) of subdivision (a) of Section 110.1, including the failure to establish that base year value, *which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered.* [¶] (b) An error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base year value was first established." (Italics added.)

All further statutory references are to the Revenue and Taxation Code, unless otherwise specified.

$288,000. [¶] Respondent, on the other hand, contends that the value change [in 1998] [solely] resulted from a Proposition 8 decline-in-value assessment. Hence, the Base Year Value never changed, and was simply temporarily replaced by the Proposition 8 assessment of $288,000. [¶] [Little's] 9/16/96 Application for Changed Assessment [the second assessment appeal] was based on two grounds, one a base-year challenge, the second a Proposition 8 decline-in-value change. Evidence in the records shows that the Assessor recommended the $288,000 value based on [Little's] Proposition 8 decline-in-value claim, and not on the change in base value claim. Aside from [Little's] own declaration, nothing in the records indicates the contrary. Thus, even if the statute of limitations did not bar [Little], he has not established that the $288,000 is the proper base year value."

On December 8, 2006, Little filed a timely notice of appeal from the judgment denying his petition for writ of mandate.

## CONTENTIONS

Little contends he was entitled to proceed under his petition for writ of mandate; he is entitled to have the corrected base year value entered on the assessment roll because the incorrect base year value did not involve the Assessor's judgment as to value; and there is no limitations bar to the prosecution of this action.

## DISCUSSION

1. *Mandamus does not lie to prevent or enjoin the collection of a tax.*

   a. *An aggrieved taxpayer's remedy is to file suit in the superior court for a refund.*

Little's petition below sought the issuance of a peremptory writ directing the Assessor to correct the property's base year value on the assessment roll to the 1996 base year value of $288,000, and to assess the property for 2004, 2005 *and all subsequent years* based upon the base year value of $288,000. Thus, Little's petition impermissibly sought to enjoin the collection of future taxes.

California Constitution article XIII, section 32, provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

■■ *Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948 [68 Cal.Rptr.2d 416] (*Sunrise*), discussed the "statutory procedure for appealing base-year value determinations. [¶] Local boards of equalization (either a county assessment appeals board or the board of supervisors) are established by the California Constitution to hear appeals from decisions of the tax assessor. (Cal. Const., art. XIII, § 16; see 2 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1997) § 26:01, pp. 1–2 (Ehrman).) [¶] The appeals process is commenced by filing a written application for changed assessment with the local board. (§ 1603.) The board then sets the matter for hearing at which it receives evidence. (§ 1604.) This appeals process is essential to filing a subsequent claim for a refund in superior court, and skipping this step will usually result in the dismissal of the suit for failure to exhaust an available administrative remedy. [Citations.]" (*Sunrise, supra,* 58 Cal.App.4th at p. 958.)

The "mechanism for judicial review of decisions by a county assessment appeals board is significantly different from that of other administrative agency decisions. Ordinarily the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund. [Citations.]" (*Sunrise, supra,* 58 Cal.App.4th at p. 955, fn. 2.)

Further, "a writ of mandamus . . . only issues when there otherwise is no speedy and adequate remedy of at law. (Code Civ. Proc., [§] 1086 . . . .)" (*County of Sacramento v. Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 672 [108 Cal.Rptr. 434].) A suit for a refund of taxes paid is an adequate remedy. (*Ibid.*)

  b. *Case law does not support Little's contention that mandamus lies in these circumstances.*

As indicated, the Assessor demurred to the petition for writ of mandate on the ground Little had an adequate remedy at law and that a complaint for refund of taxes is the exclusive remedy for the challenge of a property tax assessment. Little opposed the demurrer, contending *Sunrise, supra,* 58 Cal.App.4th 948, establishes the propriety of mandamus relief in these circumstances. However, as explained below, *Sunrise* is wholly inapposite and the trial court's apparent reliance thereon was erroneous.

In *Sunrise*, an assessor determined there had been a change in ownership on property owned by the plaintiffs, so as to trigger a reassessment. Eight

years later, the plaintiffs discovered facts which they claimed showed the assessor had erred in determining that ownership had changed. After failing to persuade the assessor, the plaintiffs appealed the assessor's decision to the local assessment appeals board. The application came before the appeals board for an administrative hearing. At the hearing, a motion was made, prior to the introduction of evidence, to refuse to hear the appeal on jurisdictional grounds, in that the application was made beyond the four-year limitation period for challenging base year value reassessments established in section 80, subdivision (a)(3). The motion carried and the appeal was "denied" for lack of jurisdiction. (*Sunrise, supra*, 58 Cal.App.4th at pp. 951–953.)

The plaintiffs then filed a petition for writ of mandate in superior court against the local assessor and appeals board, contending, inter alia, under section 51.5, errors in the assessment roll which are not based on judgment as to value (hereafter nonjudgmental errors) may be corrected anytime during the year in which they are discovered, and that the appeals board abused its discretion in refusing to hear the appeal on statute of limitations grounds. The plaintiffs prayed for either a peremptory writ commanding the local assessor to correct the 1986 base year value determination and change the rolls accordingly, or directing the appeals board to set aside its previous order and hear the appeal. (*Sunrise, supra*, 58 Cal.App.4th at p. 953.)

It was undisputed that "an erroneous 'change in ownership' determination constitutes an error not based on value judgment within the meaning of section 51.5(a)." (*Sunrise, supra*, 58 Cal.App.4th at p. 957.) *Sunrise* held "[t]he [board] erred when it determined it had no jurisdiction over the subject matter due to the fact that more than four years had elapsed since the [a]ssessor changed the base-year value. Remand to the [appeals board] was one of the alternative prayers for relief sought by plaintiffs and is appropriate to the facts of this case. [Citation.] The cause must be remanded to the [board] to exercise its jurisdiction in the first instance. [Citation.]" (*Sunrise, supra*, at pp. 960–961.)

*Sunrise* further held: "Remand to the [appeals board] also dispenses with the [a]ssessor's argument that the writ impermissibly enjoins or prevents the collection of property taxes. (§ 4807; Cal. Const., art. XIII, § 32.) *The writ, as we will modify it, will do nothing except order the [appeals board] to perform its duty to hear the appeal on its merits.* The [a]ssessor is not restrained from collecting taxes." (*Sunrise, supra*, 58 Cal.App.4th at p. 961, italics added.)

In sum, *Sunrise* ordered the issuance of a peremptory writ of mandate directing the local assessment appeals board "to vacate its decision denying plaintiffs' appeal on jurisdictional grounds and instead to hear the appeal on its merits." (*Sunrise, supra,* 58 Cal.App.4th at pp. 961–962.)

■ In contrast to *Sunrise,* the Board in this case did hold a hearing. On July 11, 2005, the Board conducted an evidentiary hearing and thereafter made a ruling on the merits against Little. *Sunrise* is not authority for the proposition that the Board's adverse decision with respect to the base year value is reviewable by way of a petition for writ of mandate under Code of Civil Procedure section 1085.

Therefore, the trial court should have sustained the Assessor's demurrer to the first amended petition for writ of mandate without leave to amend.[6]

 2. *Even assuming the petition for writ of mandate were construed as a complaint for refund of taxes, the action is time-barred.*

 a. *General principles.*

■ The "words of section 51.5 unambiguously state that only some errors in the base year value are subject to correction at any time. Under subdivision (a) of section 51.5, errors or omissions in the base year value not involving the exercise of an assessor's judgment as to value are correctible 'in any assessment year in which the error or omission is discovered.' In contrast, under subdivision (b) of section 51.5 errors or omissions in the base year value 'involv[ing] the exercise of an assessor's judgment as to value may be corrected only if it is placed on the current roll or roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base year value was first established.' Simply put, . . . the language of section 51.5, subdivision (b) unambiguously provides that errors involving the assessor's exercise of judgment as to value are subject to a four-year limitations period." (*Kuperman, supra,* 137 Cal.App.4th at p. 929.)

---

[6] Because the trial court's judgment denying the petition for writ of mandate is correct in result, it must be affirmed, irrespective of the considerations which may have moved the trial court to its conclusions. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) A decision correct in law " 'will not be disturbed on appeal merely because given for a wrong reason.' " (*Ibid.*)

In the reply brief, Little asserts that by failing to file a cross-appeal, respondents forfeited their right to argue he was not entitled to pursue a mandamus action. The contention has no merit. Respondents were entirely successful below and are not aggrieved by the judgment. (Code Civ. Proc., § 902.) Therefore, respondents had no need to file a cross-appeal. Respondents are free to urge affirmance of the judgment on grounds other than those cited by the trial court. (*D'Amico, supra,* 11 Cal.3d at p. 19.)

Examples of errors which do not involve the exercise of an assessor's judgment as to value include an assessor's erroneous determination that a change in ownership occurred (*Sunrise, supra*, 58 Cal.App.4th at p. 957), or errors or omissions resulting from a taxpayer's fraud, concealment, misrepresentation, failure to furnish information, or clerical errors. (§ 51.5, subd. (c); *Montgomery Ward & Co. v. County of Santa Clara* (1996) 47 Cal.App.4th 1122, 1130 [55 Cal.Rptr.2d 261].)

In *Kuperman*, five years after purchasing a 50-acre parcel of property, the property owner learned of an easement on the property and thereafter sought a reduction in the base year value on the assessment roll on that basis. (*Kuperman, supra*, 137 Cal.App.4th at p. 922.)

There, the property owner contended "the language of section 51.5 supports a conclusion that an assessor's exercise of judgment as to value occurs only when the assessor enrolls the property at some value other than the purchase price and since the [a]ssessor enrolled his property at the purchase price, the [a]ssessor exercised no judgment as to the value of the property." (*Kuperman, supra*, 137 Cal.App.4th at p. 929.)

The reviewing court rejected this argument, stating "[t]he record . . . shows the [a]ssessor's office did not simply enroll the property at the purchase price. Instead, the [a]ssessor, believing the $185,000 purchase price was below the fair market value of the property since the property had sold for $300,000 in 1993, conducted an investigation. Only after considering declines in the real estate market from 1993 to 1996, information about the property contained in the multiple listing service, comparable sales, and evidence showing the parcel possibly had unexploded military ordnance from Camp Pendleton, did the [a]ssessor conclude the purchase price was within the range of market value for the property. *The assessor in this case clearly made a judgment call that the purchase price adequately reflected the fair market value of the property.*" (*Kuperman, supra*, 137 Cal.App.4th at p. 929, italics added.)

Further, the property owner in *Kuperman* was charged with constructive notice of the existence of a recorded easement, and therefore the property owner did not have an unlimited period of time in which to "discover" the easement. The claim fell within the scope of section 51.5, subdivision (b), and was not timely brought within the four-year limitations period. (*Kuperman, supra*, 137 Cal.App.4th at p. 930.)

b.  *The 1994 determination setting the base year value at $480,000 involved the Assessor's exercise of judgment as to value; therefore, the matter is governed by the four-year limitations period of section 51.5, subdivision (b).*

In the instant case, the first assessment appeal in 1994 resulted in a reduction in value to $480,000. According to Little, he accepted the $480,000 valuation "as reasonable based on the mutual assumption of the Assessor and I that the Property contained 16 one-bedroom units." Little asserted "I did not have the time to verify the physical dimensions of each of the properties."

Guided by the principles set forth above, we reject Little's contention that the Assessor's base year value determination of $480,000 was based on a purely objective assessment which did not involve the Assessor's exercise of judgment as to value. The trial court properly ruled the Assessor's determination in 1994 setting the base year value at $480,000 involved the exercise of judgment. The record reflects that in arriving at the $480,000 valuation, the Assessor considered, among other factors, sales of comparable properties. That determination necessarily involved an exercise of judgment by the Assessor.

To reiterate the trial court's ruling: "Whether the units were one-bedroom or studio, the value determination in 1994 entailed the exercise of judgment as defined in *Kuperman.* Thus, the [Assessor] considered, among other things, whether the property consisted of one building or two, 16 units or 20 units, in determining the value of property and setting the base value of $480,000. Judgment was involved in the value determination. Furthermore, just as *Kuperman* had at least constructive notice of the easement, [Little], even if one were to believe that for several years he had no idea whether he bought one-bedroom units or studios, had constructive notice of the true facts. [Little] had four years to complain about the issue."

Accordingly, we conclude Little's claim fell within the scope of section 51.5, subdivision (b) and was not timely brought within the four-year limitations period.

## DISPOSITION

The judgment denying the petition for writ of mandate is affirmed. Respondents shall recover their costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 17, 2007, and appellant's petition for review by the Supreme Court was denied January 16, 2008, S157990.