Filed 6/19/13  Blue Hen Enterprises v. County of Imperial CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLUE HEN ENTERPRISES, LLC, | D059898 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. ECU05756) |
| COUNTY OF IMPERIAL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Affirmed.

Krakowsky Law Firm, Shinaan S. Krakowsky for Plaintiff and Appellant.

Schwartz Hyde & Sullivan, Laurel Lee Hyde; Schwartz Heidel Sullivan, Laurel Lee Hyde, for Defendants and respondents.

Appellant Blue Hen Enterprises, LLC (Blue Hen) purchased real estate encumbered with past-due property taxes.  Blue Hen submitted requests to the Imperial County Tax Assessor (Assessor) and the Imperial County Board of Supervisors (Board) seeking a reduction in the past-due taxes based on its claim that the value of the property

had been overassessed.[1]  The Assessor denied the request on untimeliness grounds, and Blue Hen's appeal to the Board was denied by operation of law without a consideration of the merits.  Blue Hen then filed an action in superior court requesting an order compelling the Assessor and the Board (respondents) to consider its request on the merits.  The trial court sustained respondents' demurrer and dismissed the action.  Blue Hen challenges this ruling on appeal.

We conclude that even assuming Blue Hen filed a timely claim for tax relief with respondents, the trial court's order was correct because under the relevant statutory scheme Blue Hen is precluded from obtaining its requested retroactive property tax relief.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are essentially undisputed.  In April 2009, Blue Hen purchased real property encumbered by outstanding taxes for the tax years 2006-2007 and 2007-2008.  The previous property owner had purchased the land in July 2006 for $31,780,000, which included a $19,780,000 promissory note secured by a deed of trust on the property.  At the time of the 2006 purchase, the Assessor established the tax value of the property (known as the "base year value") based on the purchase price.  The 2006 base year value was then used to calculate the taxes owed for the 2006-2007 and 2007-2008 tax years.  The previous owner failed to fully pay the taxes for the 2006-2007 and 2007-2008 tax years, and also stopped making payments on the promissory note secured by the deed of

---

[1]     When reviewing property tax matters, a county board of supervisors sits as the county board of equalization.  (Cal. Const., art. XIII, § 16; Rev. & Tax. Code, § 1601, subd. (a).)

2

trust. In December 2007 the deed of trust holder filed a notice of default, and in July 2008 acquired the property through foreclosure. In April 2009 Blue Hen purchased the property from the deed of trust holder for $1,899,999.[2]

After Blue Hen purchased the property in 2009, it sent a letter to the Assessor requesting to settle the past-due tax encumbrance on the property. In the May 28, 2009 letter, Blue Hen set forth a variety of reasons to support its claim that the assessed value of the property at the time the past taxes accrued was too high. Blue Hen proposed a lower valuation for the property so as to *retroactively* reduce the amount of taxes it owed for the 2006 through 2008 tax years. Blue Hen did *not* seek *prospective* tax relief based on the 2006 valuation because when Blue Hen purchased the property in 2009, the 2006 base year value was no longer operative since the property had been reassessed and the base year value changed in 2008 and 2009 due to the foreclosure and subsequent purchase by Blue Hen. (See fn. 4, *post*.)

By letter dated July 2, 2009, the Assessor responded that there were only two options for reviewing established roll values and, if warranted, decreasing a property's assessed value. The Assessor explained that the taxpayer must file an application for a change of assessment with the local appeals board during the regular assessment filing period for the tax year in question, or submit a request for informal review of the valuation before the end of that tax year. The Assessor stated that because neither of

---

[2] The 2006 purchase price was about $70,000 per acre, whereas the 2009 purchase price was about $5,000 per acre.

these options was exercised by Blue Hen or prior owners, the Assessor had no legal means to review the request. Accordingly, the Assessor denied the claim as untimely.

After receiving the Assessor's response, Blue Hen sent a form entitled "CLAIM FOR DAMAGES AGAINST THE COUNTY OF IMPERIAL" dated October 14, 2009, to the Board. In the claim, Blue Hen reiterated the request it had made to the Assessor for a reduction in the valuation of the property and the past-due taxes. Blue Hen emphasized in its claim that the valuation of the property giving rise to the back taxes was not properly determined, and it intended to rely on "all available legal remedies, statutory or otherwise, for appropriate relief."

By letter dated December 3, 2009, the Board rejected Blue Hen's claim "by operation of law."

In July 2010 Blue Hen filed a complaint in superior court requesting that the court remand the matter to the Board to review Blue Hen's tax assessment claims on the merits. The trial court sustained respondents' demurrer with leave to amend, ruling that Blue Hen's request for a reduction in the value was untimely under Revenue and Taxation Code sections 1603 and 1605 (which essentially require that the request be filed during the year the valuation was made).[3]

In November 2010, Blue Hen filed an amended pleading requesting that the court issue an order remanding the matter to the Assessor or the Board to consider Blue Hen's request for relief on its merits under a statutory provision (§ 51.5) which contains a four-

---

[3]  Subsequent unspecified statutory references are to the Revenue and Taxation Code.

year limitations period for reductions in base year value involving an assessor's error in judgment. Respondents again filed a demurrer, arguing that Blue Hen was improperly seeking to avoid the relevant limitations period by characterizing its request for relief as a timely section 51.5 challenge to the 2006 base year value. Alternatively, respondents argued that even if Blue Hen had properly requested section 51.5 relief, the statutory scheme (including § 80, subd. (a)(5)) permitted only *prospective* relief from the date of application for relief and forward, and hence Blue Hen was precluded from obtaining retroactive relief for the 2006 through 2008 tax years based on its 2009 application for relief.

In opposition to the demurrer, Blue Hen argued that its communications to respondents sufficed to state a claim for a reduction in the 2006 base year value under section 51.5; its claim for retroactive tax relief was timely under section 51.5's four-year limitations period; and a section 51.5 claim was not subject to the prospective-only relief provision cited by respondents (§ 80, subd. (a)(5)).[4]

On April 12, 2011, the court sustained respondents' demurrer without leave to amend and dismissed the action. The court ruled that Blue Hen's request for relief

_____

[4]     The parties did not dispute that Blue Hen was making a claim solely for retroactive tax relief; i.e., it was *not* requesting a reduction in the 2006 valuation for purposes of prospective relief. According to respondents (and undisputed by Blue Hen) at the time of Blue Hen's request for relief in 2009, the 2006 base year value governing the 2006 through 2008 tax years was no longer on the tax roll and thus did not control the taxes for 2009 and forward. Respondents explained that the base year value of the property was changed at the time of the 2008 foreclosure and the 2009 purchase by Blue Hen, and thus the case did not involve a request for a reduction in the 2006 base year value so as to prospectively reduce the taxes for 2009 and thereafter.

submitted to respondents did not constitute a claim under section 51.5, and hence its request to respondents had been untimely as previously ruled. Given this ruling, the trial court did not reach the issue of whether the prospective-only relief statutory provision applied to section 51.5 claims.

## DISCUSSION

By the time of this appeal, Blue Hen had apparently paid the past-due taxes for the 2006 through 2008 tax years, and thus it now in effect seeks a refund of a portion of these taxes based on its claim that the base year value for 2006 should be reduced. Blue Hen argues the trial court erred in finding that its communications to respondents did not suffice to notify respondents that Blue Hen was making a request under section 51.5 for a reduction in the 2006 base year value. Further, Blue Hen contends that relief based on a section 51.5 claim is not restricted by the prospective-only relief provision set forth in section 80, subdivision (a)(5), and thus there is no bar to its receipt of a retroactive refund of the 2006 through 2008 taxes based on its application for relief in 2009.

### I. *Review Standards*

On appeal from a judgment sustaining a demurrer without leave to amend, we assume the factual allegations in the complaint are true and examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1181.) A demurrer is properly sustained if the pleading or matters that are judicially noticeable clearly disclose a complete defense or bar to recovery. (*Ibid.*; *Cryolife, Inc. v. Superior Court* (2003) 110

6

Cal.App.4th 1145, 1152.)  We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.  (*Syngenta, supra*, at p. 1181.)

## II.  *Relevant Legal Principles*

Under California's real property tax scheme, the annual amount of taxes paid by a taxpayer is assessed by using the base year value of the property as the starting point. (*Metropolitan Culinary Services, Inc. v. County of Los Angeles* (1998) 61 Cal.App.4th 935, 939 (*Metropolitan Culinary*).)  The property may be taxed at a maximum of 1 percent of its base year value, and the base year value may be compounded annually based on an inflation factor not to exceed 2 percent of the prior year's value.  (Cal. Const., art. XIII A, § 1, subd. (a); § 51, subd. (a)(1); *Osco Drug, Inc. v. County of Orange* (1990) 221 Cal.App.3d 189, 192 (*Osco*).)  Under section 110.1, the base year value is set at the assessor's fair market valuation as of the 1975-1976 tax year (§ 110.1, subd. (a)(1)), and thereafter the base year value may be increased to the current fair market value only upon a purchase, change in ownership, or new construction (§ 110.1, subd. (a)(2)).  (See *Osco, supra*, 221 Cal.App.3d at p. 192; *Metropolitan Culinary, supra*, 61 Cal.App.4th at p.

939.)[5]

Once the base year value is determined, the assessor places the value on the tax roll. (§§ 601, 602, 110.1, 50; see *Montgomery Ward & Co., Inc. v. County of Santa Clara* (1996) 47 Cal.App.4th 1122, 1129 (*Montgomery Ward*); 1 Flavin, Taxing Cal. Property (4th ed. 2012) Preparing and Correcting the Roll, § 12:1 (Flavin).) In the succeeding tax years, the assessor uses the same base year value (compounded by the inflation factor) to formulate the annual value assessment on the tax roll for that property, unless and until there is a change in the base year value resulting from a purchase, change in ownership, or new construction. (See *Osco, supra*, 221 Cal.App.3d at p. 192; *Kuperman v. San Diego County Assessment Appeals Bds. No. 1* (2006) 137 Cal.App.4th 918, 923-924 (*Kuperman*).)

The Revenue and Taxation Code contains provisions that authorize a taxpayer to challenge the assessor's determination of (1) the base year value, and (2) the value assessment for a particular tax year. The provisions governing a challenge to a particular year's value assessment are set forth in section 1603 et seq. Sections 1603 and 1605

---

[5] Section 110.1, subdivision (a) defines base year value as the fair market value based on "(1) the 1975 lien date[,]" or "(2) For property which is purchased, is newly constructed, or changes ownership after the 1975 lien date, either of the following: [¶] (A) The date on which a purchase or change of ownership occurs. [¶] (B) The date on which new construction is completed, and if uncompleted, on the lien date."

The taxable value of the property may also be temporarily decreased when there is a decline in the value of the property due to market changes or other factors. (§ 51, subd. (a)(1) & (2) [taxable value is lesser of (1) base year value, or (2) fair market value taking into account factors causing a decline in value]; see *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 918, fn. 2 (*Little*).)

require that the taxpayer submit an application for a reduction in the assessment to the county board within a specified time period (called the "equalization period") which generally is in the same year that the assessment is made.[6] (See § 80; 1 Flavin, *supra*, §§ 12:11, 12:13; 2 Flavin, *supra*, Preparing for Assessment Appeal, §§ 26:5, 26:8; *Metropolitan Culinary, supra*, 61 Cal.App.4th at p. 941, fn. 7.)

The provisions governing a challenge to the base year value are set forth in sections 51.5 and 80. Section 51.5, subdivision (b) states that an error in the determination of the base year value under section 110.1, subdivision (a)(2) (i.e., based on a purchase, change in ownership, or new construction) which involves the exercise of an assessor's judgment as to value may be corrected within four years after July 1 of the year the base year value was first established.[7] Section 51.5, subdivision (d) provides

---

[6] Section 1603, subdivision (a) states: "A reduction in an assessment on the local roll shall not be made unless the party affected or his or her agent makes and files with the county board a verified, written application showing the facts claimed to require the reduction and the applicant's opinion of the full value of the property." Subsequent subdivisions of section 1603 delineate the time limitations that apply under various circumstances. Section 1605 sets forth provisions that apply when there is a supplemental assessment outside the regular assessment period.

[7] In contrast to section 51.5, subdivision (b)'s four-year limitation period to correct value-judgment errors, section 51.5, subdivision (a) provides that there is no limitation period to correct errors that do not involve the exercise of judgment.

These subdivisions of section 51.5 state:

"(a) Notwithstanding any other provision of the law, any error or omission in the determination of a base year value pursuant to paragraph 2 of subdivision (a) of Section 110.1, including the failure to establish that base year value, which does not involve the exercise of an assessor's judgment as to value, shall be corrected in any assessment year in which the error or omission is discovered.

"(b) An error or an omission described in subdivision (a) which involves the exercise of an assessor's judgment as to value may be corrected only if it is placed on the

9

that if such a correction reduces the base year value, "appropriate cancellations or refunds of tax shall be granted in accordance with this division."[8]

Section 80 (which is in the same division (Division 1) as section 51.5) sets forth procedures for a taxpayer to submit an application to the county board to reduce the base year value.  Section 80, subdivision (a) provides that "[a]n application for reduction in the base-year value of an assessment in the current roll may be filed during the regular filing period for that year as set forth in Section 1603 . . ." (i.e., by submitting an application to the county board during specified time periods), subject to certain limitations.  These limitations state that the base year value determined under section 110.1, subdivision (a)(2) (i.e., based on a purchase, change of ownership or new construction), or under section 51.5 (i.e., based on a correction to the base year value), shall be conclusively presumed to be the base-year value unless an application is filed during the equalization period for the year of the assessment or correction or in any of the three succeeding years. (§ 80, subd. (a)(3),(4); see 2 Flavin, *supra*, § 26:8; Cal. Real Estate Law & Practice

---

current roll or roll being prepared, or is otherwise corrected, within four years after July 1 of the assessment year for which the base year value was first established."

[8]      Section 51.5, subdivision (d) states:  "If a correction authorized by subdivision (a) or (b) reduces the base year value, appropriate cancellations or refunds of tax shall be granted in accordance with this division.  If the correction increases the base year value, appropriate escape assessments shall be imposed in accordance with this division."

(Matthew Bender 2013) § 401.82[2][e] (Matthew Bender).)[9] This limiting provision in

section 80 essentially gives taxpayers "four years within which to appeal new base-year

value determinations." (*Osco, supra*, 221 Cal.App.3d at p. 193; see *Montgomery Ward,*

*supra*, 47 Cal.App.4th at p. 1139.)

Although section 80 gives the taxpayer three extra years after the year a new base

year value is placed on the tax roll to request a reduction in the base year value, the

section includes an additional limitation which precludes the taxpayer from obtaining

*retroactive* relief from assessments affected by a reduction in the base year value. This

---

[9]    Section 80 states in relevant part:
    "(a) An application for reduction in the base-year value of an assessment on the current local roll may be filed during the regular filing period for that year as set forth in Section 1603 . . . , subject to the following limitations:
    [¶] . . . [¶]
    "(3)  The base-year value determined pursuant to paragraph (2) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base-year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment.
    "(4)  The base-year value determined pursuant to Section 51.5 shall be conclusively presumed to be the base-year value unless an application for equalization is filed during the appropriate equalization period for the year in which the error is corrected or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment.
    "(5)  Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter."
    Subdivision (c) of section 80 addresses supplemental assessments and applies the same procedures, stating, "An application for equalization pursuant to . . . Section 1605 [concerning supplemental assessments] when determined, shall be conclusively presumed to be the base-year value in the same manner as provided herein."

11

prospective-only relief provision is set forth in section 80, subdivision (a)(5), which states: "Any reduction in assessment made as the result of an appeal under this section shall apply *for the assessment year in which the appeal is taken and prospectively thereafter*." (Italics added; see fn. 9, *ante*.) To illustrate, if a taxpayer " 'wishes to appeal as too high a base [year] value established in 1980, the last year in which to make such an appeal would be 1984; if successful, the change would be effective for 1984-85 and thereafter . . . .' " (*Osco, supra*, 221 Cal.App.3d at p. 194.)

In short, sections 51.5 and 80 provide independent mechanisms for changes in base year values, and section 80 explicitly provides an avenue for a taxpayer to seek a reduction in the base year value from the county board. Although section 51.5 does not explicitly provide for a taxpayer challenge to a base year value determination, in *Metropolitan Culinary* the court construed section 51.5 to allow a taxpayer to request a base year value correction under the terms of that statute. (*Metropolitan Culinary, supra*, 61 Cal.App.4th at pp. 941-944; accord *Kuperman, supra*, 137 Cal.App.4th at p. 924; see *Little, supra*, 155 Cal.App.4th at p. 927; *Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 951-952, 957, 960 (*Sunrise*); Matthew Bender, *supra*, § 401.82[2][e].)

However, the *Metropolitan Culinary* court also concluded that section 80's prospective-only relief provision applies even when the taxpayer seeks relief under section 51.5 rather than section 80. (*Metropolitan Culinary, supra,* 61 Cal.App.4th at pp. 942-943, 946-947; see *Sea World, Inc. v. County of San Diego* (1994) 27 Cal.App.4th 1390, 1403 (*Sea World*); *Sunrise, supra*, 58 Cal.App.4th at p. 961; *Osco, supra*, 221 Cal.App.3d at p. 195, fn. 9; Matthew Bender, *supra*, § 401.82 (2)(e).) *Metropolitan*

12

*Culinary* cited section 51.5, subdivision (d), which states that in the event a base year value correction is made, " 'appropriate cancellations or refunds of tax shall be granted in accordance with this division.' " (*Metropolitan Culinary, supra*, at p. 947.) Because section 80 is in the same division as section 51.5, *Metropolitan Culinary* concluded section 80's prospective-only provision applied to a claim under section 51.5. (*Metropolitan Culinary, supra*, at p. 947.)[10]

Thus, under the statutory scheme, a taxpayer may request that a value-judgment base year value be changed within four years of the year the base year value was established. Within the four-year period, the taxpayer can obtain *retroactive* recalculation of the base year value, but only a *prospective* refund of taxes based on the recalculation of the base year value. That is, the base year value reduction will, for calculation purposes only, decrease the assessment value for each succeeding year because the inflation factor and 1 percent tax amount will be formulated based on the reduced base year value. However, the base year value reduction will cause a change in

---

[10]     In addition to relying on the plain language of section 51.5, subdivision (d) to support application of section 80's prospective-only provision, *Metropolitan Culinary* court also cites the analysis and conclusions in this court's opinion in *Sea World*. (*Metropolitan Culinary, supra*, 61 Cal.App.4th at pp. 942-943, 947.) Blue Hen asserts that *Metropolitan Culinary* misconstrued *Sea World*, and that *Sea World* applies section 80's prospective-only provision only when a taxpayer files a section 80 appeal. To the contrary, *Sea World* broadly states: "[A]lthough *section 51.5* provides a procedure separate from section 80 for the correction of errors in base year values, that section, enacted to provide guidelines for county assessors in making base year value corrections, when viewed with the entire statutory scheme of which it is a part, *does not override the prospective only application of section 80, subdivision (a)(5)* for a reduced base year value determined as a result of a successful taxpayer's application for the reduction of such value." (*Sea World, supra*, 27 Cal.App.4th at p. 1403, italics added.)

13

the assessment value actually on the roll for purposes of a *refund* of taxes *only for the year of the application for relief and the succeeding tax years*.  (See, e.g., *Metropolitan Culinary, supra*, 61 Cal.App.4th at pp. 938, 947-948 [application for relief submitted in 1995-1996 tax year for error in 1992 base year value did not permit refund for 1992 through 1994 years]; *Osco, supra*, 221 Cal.App.3d at pp. 191-192, 194 [application for relief submitted in 1984 for error in 1981 base year value did not permit relief for 1981 through 1983 tax years; "*while new 1981 base-year values were established, they did not affect any assessment prior to 1984*," italics added].)

### III.  *Analysis*

We need not discuss the issue of whether Blue Hen's communications to respondents stated a claim under section 51.5, because even assuming they did, Blue Hen is not entitled to its requested retroactive relief.[11]  As we shall explain, we conclude section 80's prospective-only relief provision applied so as to preclude the retroactive relief requested by Blue Hen in 2009 for the 2006 through 2008 tax years.

When interpreting a statute, our goal is to ascertain the legislative intent so as to effectuate the purpose of the statute.  (*Sanchez v. Swissport, Inc.* (2013) 213 Cal.App.4th 1331, 1336-1337.)  We give the words of the statute a plain and commonsense meaning, and construe them in the context of the statute as a whole.  (*Ibid.*; *Sea World, supra*, 27

---

11     We note there is no dispute that Blue Hen's request for a reduction in the 2006 base year value was based on a claim of error in the Assessor's *judgment*, which is governed by the four-year limitations period in section 51.5.  Blue Hen's 2009 application for a change in the 2006 valuation was timely filed within the required four-year period.  Thus, if Blue Hen's communications to the Assessor and Board are construed as a section 51.5 claim, respondents' rejection of the claim on untimeliness grounds was improper.

Cal.App.4th at pp. 1402-1403.) "[I]f a statute is clear, the 'plain meaning' rule applies; the Legislature is presumed to have meant what it said." (*Sea World, supra*, at p. 1402.)

We agree with the analysis and holding in *Metropolitan Culinary* that a section 51.5 claim is governed by the section 80 prospective-only relief provision. As set forth above, section 51.5, subdivision (d) provides that when there is a correction in the base year value under section 51.5, cancellations and refunds of taxes "*shall be granted in accordance with this division*." (Italics added.) Section 80's prospective-only provision is in the same division (Division 1) of the Revenue and Taxation Code as section 51.5. Thus, the plain terms of section 51.5, subdivision (d) incorporate the section 80 prospective-only relief provision. As stated in *Metropolitan Culinary*: "[S]ection 80 is part of the same statutory division as section 51.5, and thus qualifies as being part of the 'this division' wording of that latter statute. Section 80, subdivision (a)(5) is crystal clear that any reduction in assessment of base year value shall only apply to 'the assessment year in which the appeal is taken and prospectively thereafter.' " (*Metropolitan Culinary, supra*, 61 Cal.App.4th at p. 947.)

To support a contrary conclusion, Blue Hen argues that section 51.5 provides the taxpayer an independent mechanism to request *the assessor* to correct an error in a base year value that is not subject to section 80's prospective-only relief provision which only governs claims made *in an appeal to the board* under section 80. Blue Hen notes that the section 80, subdivision (a)(5) prospective-only relief provision refers to a "reduction in assessment made as the result *of an appeal under this section*." (Italics added.) Blue Hen posits that under section 51.5 it is entitled to have the Assessor consider its request for a

15

correction on the merits so the Assessor "can have the opportunity to make 'an uncontested determination or a concession of error or omission in his value judgment' regarding the July 2006 Base Year Value." (Italics omitted.) Blue Hen's suggestion that section 51.5 was designed to provide the Assessor an avenue of correction without being restricted by section 80's prospective-only provision is not supported by the statutory scheme.

Section 51.5 does not expressly address the procedure by which a taxpayer should submit a request for a base year value correction under its provisions. In any event, the courts recognize that a taxpayer may properly submit an informal request for correction to the assessor, followed by an appeal to the county board if the assessor denies the request. (See, e.g., *Kuperman, supra*, 137 Cal.App.4th at pp. 922, 924; *Metropolitan Culinary, supra*, 61 Cal.App.4th at pp. 938, 945; *Sunrise, supra*, 58 Cal.App.4th at p. 951; see also § 75.31, subd. (c)(1) [taxpayer who receives supplemental assessment based on new base year value shall be given notice advising of "the right to an *informal review* and the right to appeal the supplemental assessment," italics added]; 2 Flavin, *supra*, § 26:4.) However, if the Legislature had intended the assessor's (or the county board's) power to correct base year values under section 51.5 to operate *independently* of section 80's prospective-only relief provision, it would not have included the incorporating language in section 51.5, subdivision (d) stating that "cancellations or refunds of tax shall be granted in accordance with this division."

Blue Hen's suggestion that an assessor's decision under section 51.5 to correct a base year value *automatically* entitles the taxpayer to relief, including a retroactive

16

refund, is contravened by the incorporation of section 80's prospective-only relief provision into section 51.5. Based on section 80's prospective-only relief limitation, the courts have repeatedly recognized that a correction in a base year value does not result in an automatic refund of taxes; rather, any tax relief can be made only on a prospective basis. For example, the *Sea World* court stated: "[Appellant] thus contends section 51.5 requires the assessor to correct the . . . base value . . . and refund the excess taxes [appellant] paid regardless of the untimeliness of its claim and the prospective only effect of section 80. [Citations.] We conclude [appellant's] interpretation of section 51.5 is incorrect. [¶] . . . [¶] *[Section 51.5] does not override the prospective only application of section 80, subdivision (a)(5) . . . .*" (*Sea World, supra*, 27 Cal.App.4th at pp. 1402-1403, italics added.) Similarly, the *Osco* court commented: "*There is a distinction between the reduction in a base-year value and a right to refund of taxes . . . .* The correction of the base-year value allows the assessor to determine whether there has been an overassessment or an underassessment. Thereafter, an application must be made for a refund. It does not follow that a reduction in a later year's base value requires a similar lowering of previous years' values. [¶] . . . [¶] [Section 80,] [s]ubdivision (a)(5) provides that any reduction in assessment made as a result of a reduction in base-year value shall apply for the assessment year in which the appeal is taken and prospectively thereafter." (*Osco, supra*, 221 Cal.App.3d at pp. 193-194, italics added.) Thus, even assuming arguendo the Assessor might agree with Blue Hen's contention that the 2006 valuation was excessive, under section 51.5, subdivision (d), the Assessor's authority to grant relief is prospective only.

17

In sum, there is nothing in the statutory scheme that suggests the Legislature intended section 51.5 to operate independently of section 80 so as to give the assessor broader relief powers under section 51.5 than are available under section 80. To the contrary, section 51.5, subdivision (d) reflects an intent to make the relief available under sections 51.5 and 80 coextensive, thereby making section 80's prospective-only provision applicable to section 51.5 claims. There is no dispute that Blue Hen's 2009 application for relief sought only *retroactive* relief for the 2006 through 2008 tax years. The 2006 base year value was changed in 2008 (at the time of the foreclosure on the property) and thus the 2006 challenged valuation was *not* used to thereafter assess the taxes on the property. (See fn. 4, *ante*.) Under the statutory scheme, even if the Assessor would agree with Blue Hen that the 2006 base year value should be reduced, Blue Hen would only be entitled to a refund of taxes for the year of its request (2009) and forward. No such prospective request for relief is operative here. Because as a matter of law Blue Hen cannot obtain its requested retroactive tax relief, the trial court properly sustained the demurrer and dismissed the action.

DISPOSITION

The judgment is affirmed.  Appellant to pay respondents' costs on appeal.


_____
                                                        HALLER, J.

WE CONCUR:


_____
        HUFFMAN, Acting P. J.


_____
                IRION, J.